DAVID SMITH, Appellee and Cross-Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Norris Farms, Appellant and Cross-Appellee).

Third District (Industrial Commission Division)   No. 3—87—0001WC

Opinion filed April 8, 1988.

Stephen J. Heine, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

R. Wayne Harvey, of Harvey & Stuckel, Chartered, of Peoria, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Claimant, David Smith, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for a leg injury which arose out of and during the course of his employment with Norris Farms. An arbitrator found claimant's average weekly wage to be $51.78 (Ill. Rev. Stat. 1983, ch. 48, par. 138.10) and denied claimant's request for penalties under sections 19(k), 19(l) and 19(m) (Ill. Rev. Stat. 1983, ch. 48, pars. 138.19(k), (l), (m)). On review initiated by claimant, the Industrial Commission found claimant's average weekly wage to be $232.32. It modified the arbitrator's award to $178.02 for 53³/₇ weeks of temporary total disability and awarded claimant a $500 penalty pursuant to section 19(l). On review initiated by both parties, the circuit court confirmed the Industrial Commission determination. Both parties appeal to this court. The facts are as follows.

On October 16, 1984, the 29-year-old claimant was shoveling corn for the employer when his right leg got caught in an auger, causing its amputation below the knee. The employer acknowledged in a settlement with the United States Department of Labor that the safety equipment on the auger which caused claimant's injury violated the Federal Occupational Safety and Health Act (OSHA) (29 U.S.C. §651 *et seq.*).

Immediately after the injury, the employee's insurance carrier paid claimant $35.80 per week for seven weeks of temporary total disability. Prior to the December 5, 1984, arbitration hearing, the employer admitted that it failed to include approximately two weeks of employment in computing the average weekly wage and that, as a consequence, claimant was entitled to $47.93 per week for this seven-week period.

Claimant testified that prior to 1984 he worked for the employer several times on an intermittent basis. When he was not working for the employer, claimant engaged in trapping, farm labor, and truck driving. Claimant presented no written records of his monetary com-

pensation for these activities.

On September 10, 1984, claimant went to work for the employer. He was paid a wage of $4.25 per hour, with overtime pay (time and a half) for over 10 hours per day or over 50 hours per week. Pay stubs from September 10 through the date of injury show that for the pay period ending September 19 claimant was paid for 90 regular hours and 31 overtime hours, for the pay period ending October 5 claimant was paid for 100 regular hours and 55 overtime hours, and for the pay period ending October 19, claimant was paid for 80 regular hours and 36 overtime hours. The October 19 pay stub shows claimant's regular earnings to date as $1,194.26.

Ray Rhoades, the employer's comptroller, testified that between October 16, 1983, and October 16, 1984, the employer paid claimant a total of $2,692.58. This sum consisted of bonuses and wages for the following employment periods: In 1983, claimant worked nine days in the two-week pay period ending October 21 and two days for the pay period ending November 4. Thus, claimant worked a total of 11 days for the employer from October 16, 1983, through the end of the year. In 1984, claimant worked one day for the pay period ending May 25 and full weeks from September 10 through the date of the injury.

On the basis of this evidence and in accordance with his interpretation of section 10, the arbitrator divided the amount of money claimant earned from October 16, 1983, through October 16, 1984 ($2,692.58), by 52 weeks, which resulted in an average weekly wage determination of $51.78. The Industrial Commission, without stating reasons, differed with the arbitrator's interpretation of section 10, apparently concluding that claimant's employment period was less than 52 weeks and should be so computed. Moreover, the Industrial Commission found that the only proof as to the precise number of weeks or parts thereof worked by claimant was shown on the pay stubs submitted for the weeks between September 10, 1984, and the pay period during which the injury occurred. Accordingly, the Industrial Commission recomputed the claimant's average weekly wage during this period to be $232.32 ($1,194.26 divided by $5^{1}/7$ weeks). The Industrial Commission further found that claimant was entitled to $500 pursuant to section 19(l) because the employer waited 50 days before paying the difference between the amount of money originally paid to claimant ($35.80 per week) and the amount admittedly due ($47.93 per week). However, the Industrial Commission found no penalties under section 19(k) because there was a legitimate issue as to claimant's average weekly wage and no penalties under section 19(m) because the Federal Occupation Safety and Health Act (OSHA) preempts en-

forcement of this provision.

On appeal, the employer contends (1) that the Industrial Commission's determination of claimant's average weekly wage is contrary to section 10, and (2) that the Industrial Commission's award of penalties under section 19(l) was improper. On cross-appeal, the claimant contends that the Industrial Commission erred in not awarding penalties pursuant to sections 19(k) and 19(m).

Section 10 of the Act provides in pertinent part:

"The basis for computing the compensation provided for in Sections 7 and 8 of the Act shall be as follows:

The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." Ill. Rev. Stat. 1983, ch. 48, par. 138.10.

██ ▌ If words used in a prior statute to express a certain meaning are omitted from a later statute, it will be presumed that a change of meaning was intended. (*Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 212, 483 N.E.2d 512, 515.) Prior to 1980, section 10 set forth formulas for determining the average weekly wage of claimants in a variety of different employment situations (*e.g.*, injured seasonal employees, employees injured prior to working a full year for the em-

ployer, and employees injured and either unpaid or underpaid for that occupation). The formula for determining the average weekly wage of seasonal or intermittent employment was less generous than that for other employment. (See generally Ill. Rev. Stat. 1979, ch. 48, pars. 138.10(c), (d), (e), (f).) In contrast, the provision of section 10 in effect at the time claimant was injured provides that the employee's average weekly wage be determined on the basis of the employee's actual regular earnings during the prior 52 weeks of employment unless the employee lost five or more calendar days during the 52-week period, the period of employment prior to the injury was less than 52 weeks, or the shortness of the period of employment or its casual nature makes such computation impractical. When employment is neither short nor casual, the employee's average weekly wage is to be determined on the basis of the number of weeks actually worked during the relevant time period. For short or casual employments, the employee's average weekly wage is to be determined with regard to "the average weekly amount which during the 52 weeks previous to the [disability] was being [earned] or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." (Ill. Rev. Stat. 1983, ch. 48, par. 138.10.) Thus, the only substantive difference between the computation of the average weekly wage of short or casual employments and other employments is that actual regular weekly earnings are used to determine the latter, whereas probable regular weekly earnings are used to determine the former. We therefore conclude that this language was chosen to correct the inequity which results when an injured seasonal or intermittent employee is given less generous benefits than his more steadily employed counterpart even though the seasonal or intermittent employee is deprived of the ability to take other employment which would have been available to him had he not been injured. (*Cf. Village of Clarendon Hills v. Industrial Comm'n* (1986), 149 Ill. App. 3d 994, 999, 501 N.E. 2d 179, 182.) In short, section 10 as it now exists has nullified the distinction which previously existed between seasonal or intermittent employment and other employment.

■ Assuming compliance with section 10, the Industrial Commission's determination of a claimant's average weekly wage is an issue of fact which will not be set aside unless it is contrary to the manifest weight of the evidence. (See *Rowe Construction Co. v. Industrial Comm'n* (1984), 128 Ill. App. 3d 365, 370-71, 470 N.E.2d 1196, 1199-1200.) In the instant case the Industrial Commission took the pay stubs, which it considered to be the only precisely verifiable measure

of the number of weeks claimant worked, and divided this number into claimant's regular earnings during this period. We conclude that this finding and the resulting computation are not contrary. to the manifest weight of the evidence. Accordingly, we reject the employer's argument that the Industrial Commission's computation did not comport with section 10.

■■ Section 19(l) provides that the Industrial Commission shall allow additional compensation of $10 per day for each day weekly compensation is withheld, up to a limit of $2,500, when an employer or its insurance carrier delays the payment of compensation without good or just cause. A delay of 14 days creates a rebuttable presumption of unreasonable delay. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(l).) The employer claims that the amount of money claimant was underpaid was "*de minimus*" and that the "plain language of 19(l) indicates that 19(l) payments are not applicable to any underpayment due to a computation error." These assertions are not germane. Section 19(l) provides that the Industrial Commission shall award additional compensation when the delay in payment is unjust or unreasonable. Since the employer did not show just or reasonable cause for the 50-day delay in correcting the computation error, the $500 penalty was mandatory. Accordingly, we reject the employer's argument that a section 19(l) penalty was improperly imposed. We will now address claimant's contentions on cross-appeal.

■■■ Section 19(k) provides that the Industrial Commission may award additional compensation of up to 50% of the compensation award when there has been any unreasonable or vexatious delay of payment, intentional underpayment, or when frivolous proceedings are instituted by the party liable for compensation. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(k).) Where there is a delay in paying compensation, it is the employer's burden to show it had a reasonable belief the delay was justified. Whether the employer's conduct justifies the imposition of penalties is to be considered in terms of reasonableness and is a factual question for the Industrial Commission. (*Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 57, 489 N.E.2d 913, 918.) In the instant case, the Industrial Commission found that a penalty under section 19(k) was not justified because a legitimate issue existed as to the amount of compensation due. We conclude that this determination was not contrary to the manifest weight of the evidence. Moreover, we note that the imposition of a penalty under this section is discretionary rather than mandatory. Accordingly, we reject claimant's argument that he was entitled to a section 19(k) penalty.

■ Section 19(m) provides that the Industrial Commission shall

allow additional compensation equal to 25% of the amount of compensation payable to the employee or his dependents if the accidental injury resulted from the employer's wilful violation of standards set forth in the Health and Safety Act (Ill. Rev. Stat. 1983, ch. 48, par. 137.1 *et seq.*). (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(m).) Section 4(d) of the Health and Safety Act provides in pertinent part:

> "(d) All federal occupational safety and health standards which the United States Secretary of Labor has heretofore promulgated, modified or revoked in accordance with the Federal Occupational Safety and Health Act of 1970, shall be and are hereby made rules of the Illinois Industrial Commission unless the Illinois Industrial Commission shall make, promulgate, and publish an alternate rule at least as effective in providing safe and healthful employment and places of employment as a federal standard." (Ill. Rev. Stat. 1983, ch. 48, par. 137.4(d).)

Claimant contends that although Illinois may not develop or enforce safety standards within OSHA's coverage (*Stanislawski v. Industrial Comm'n* (1983), 99 Ill. 2d 36, 457 N.E.2d 399), Illinois shall impose penalties under section 19(m) when a properly determined violation of OSHA is a causative factor in the employee's injury.

In *Stanislawski*, our supreme court held that since the enactment of the Federal Occupational Safety and Health Act of 1970 (29 U.S.C. §651 *et seq.*), there is no safety and health standard in force and effect to which section 19(m) may be made applicable. (*Stanislawski*, 99 Ill. 2d at 39-40, 457 N.E.2d at 401.) Because Illinois has not since submitted a plan for the development and enforcement of occupational safety and health standards (see 29 U.S.C. §667(b)), the *Stanislawski* holding continues to preclude the imposition of section 19(m) penalties.

For the foregoing reasons the judgment of the circuit court confirming the Industrial Commission determination is affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and WOODWARD, JJ., concur.