JOHN E. COOK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Seneca Petroleum, Appellee).

Third District (Industrial Commission Division)   No. 3—91—0609WC

Opinion filed July 1, 1992.

R. Wayne Harvey, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

Charles D. Knell and John F. Kamin, both of Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The claimant, John R. Cook, appeals the circuit court's decision confirming the Industrial Commission's (Commission's) decision which awarded claimant temporary total disability (TTD) benefits pursuant to the Illinois Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138 *et seq.*). At issue is the correct method for calculation of average weekly wage. We affirm.

The pertinent facts are as follows. On July 19, claimant, a laborer in the employ of Seneca Petroleum (the employer), suffered a work-related injury. During the year preceding claimant's injury, claimant worked during 24 different weeks for the employer, and over the course of the preceeding year, had earned a total of $10,266.42 for nonovertime work. During this time period, claimant worked only three full, 40-hour weeks; the majority of weeks claimant worked less than five full days and less than 40 hours a week, often working less than an eight-hour day.

Dividing claimant's total of $10,266.42 by 24, the number of weeks during which claimant actually worked, the arbitrator found

that claimant's average weekly wage was $427.77. The Commission ruled consistently with the arbitrator on the amount of claimant's average weekly wage, and the circuit court confirmed the Commission.

Claimant contends that the decision of the Commission was against the manifest weight of the evidence, contending that the Commission should have divided claimant's total wages by $15.53 (an amount claimant asserts was his hourly wage), to arrive at a figure of 661.07 actual hours worked. Then, according to claimant, 661.07 should be divided by 8 (representing a full, eight-hour work day), to arrive at a figure of 82.63 (representing the number of full days claimant worked). 82.63 should be divided by 5 (representing the days in a full week), to reach of a figure of 16.53, which is the number of full weeks claimant worked. Finally, according to claimant, his total wages for the period of $10,266.41 should be divided by 16.53, which equals $621.20, the average weekly wage.

Section 10 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.10) provides for the method of calculating a worker's compensation. It states:

> "The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceeding the date of injury, illness or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted."

In *Smith v. Industrial Comm'n* (1988), 170 Ill. App. 3d 626, 631, 525 N.E.2d 81, the court stated: "Assuming compliance with section 10, the Industrial Commission's determination of a claimant's average weekly wage is an issue of fact which will not be set aside unless it is contrary to the manifest weight of the evidence." In *Smith*, the court affirmed both the amount of average weekly wages the Commission arrived at and the method by which the Commission arrived at that amount. With respect to the method by which the Commission reached its decision, the court stated: "In the instant case the Industrial Commission took the pay stubs, which it considered to be the only precisely verifiable measure of the number of weeks claimant worked, and divided this number into claimant's regular earnings dur-

ing this period." (170 Ill. App. 3d at 631-32.) At issue in *Smith* was a different part of section 10 than applies to the present case, namely, average weekly wage calculation for an employee whose employment did not extend to a period of one year preceeding the injury. Here, claimant's employment did extend that far, although it is clear that claimant lost more than five calendar days during the year preceeding his injury.

In the case *sub judice*, the only evidence of record which speaks to claimant's earnings during the year preceeding his injury is a list, provided by the employer and accompanied by a signature of one of the employer's employees. The list bears a caption which states that it is regarding claimant's wages for a period of one year preceeding the injury. The document contains a list of 24 separate dates, followed by amounts which vary from $627 to $187.02. The list also refers to overtime wages, and both claimant's regular and overtime wages are totaled for the time period. Absolutely no other documentary evidence relating to claimant's wages exists in the record, and there is no sworn testimony on the issue in the record.

In a worker's compensation proceeding, the claimant has the burden of proving by a preponderance of the evidence the elements of his claim. (See *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 403 N.E.2d 221.) The average weekly wage under section 10, we feel, is likewise a matter which the claimant has the burden of establishing. *Sub judice*, claimant provided the Commission with no other evidence of his wages than the exhibit discussed above, and no other evidence of his wages exists in the record. Accordingly, there was before the Commission and is before this court no way to verify claimant's assertion that his hourly pay was $15.53 per hour, or that claimant's "usual and customary work hours were [eight] hours per day, 40 hours per week," as claimant contends in his brief. The evidence relied upon, which was stipulated to by the employer, formed the only evidence upon which the Commission could base its decision. We note that both claimant and the employer agree in their briefing that claimant only worked during 24 weeks with the employer in the year preceeding his injury, and that the majority of these weeks were not full, 40-hour weeks. Curiously, however, total regular pay for the three weeks which claimant earned the most wages, which would be expected to be the full, 40-hour weeks and to be the same amount, in fact varies slightly. Given the scant evidence before the Commission, we conclude that its determination of claimant's average weekly wage was not against the manifest weight of the evidence. The only recourse to the Commission, based strictly upon the evidence before it,

was to divide claimant's total wages by the number of weeks claimant worked, as reflected in the evidence.

We note, moreover, that even if, *arguendo*, the relevant facts are as claimant asserts, claimant's proposed formula for computing average weekly wage under section 10 is incorrect. As the *Smith* court observed in interpreting section 10, "the only substantive difference between the computation of the average weekly wage of short or casual employments and other employments is that actual regular weekly earnings are used to determine the latter, whereas probable regular weekly earnings are used to determine the former." (170 Ill. App. 3d at 631.) As indicated, the *Smith* court affirmed the Commission's decision where the Commission took the verifiable number of weeks worked and divided that number into claimant's regular earnings for the period in question to arrive at the average weekly wage. This is in fact what occurred in the case *sub judice*.

*McCartney v. Industrial Comm'n* (1988), 174 Ill. App. 3d 213, 529 N.E.2d 250, and *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n* (1989), 180 Ill. App. 3d 885, 536 N.E.2d 1008, upon which claimant relies, are distinguishable. In *McCartney*, we reversed a Commission determination with respect to occasional workers where the Commission divided 52 weeks into total regular wages for the preceeding years. In *Illinois-Iowa Blacktop*, we rejected an employer's contention that 52 should be divided into total regular wages, and further, the evidence appeared to indicate that when the claimant did work, it was a full, 40-hour week. In *McCartney*, we observed that average weekly wage is to be determined on the basis of "actual regular earnings divided by the number of weeks actually worked," since, as here, the claimant lost five or more calender days of employment during the 52 weeks the claimant worked the preceeding year. (*McCartney*, 174 Ill. App. 3d at 215.) While we recognize that a contrary result to that of our own was reached in *Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n* (1989), 181 Ill. App. 3d 616, 537 N.E.2d 381, that case is not in line with *Hasler v. Industrial Comm'n* (1983), 97 Ill. 2d 46, 454 N.E.2d 307, where our supreme court, in construing the predecessor to section 10, observed:

> "We believe that the purpose of the Act is to compensate, or 'make whole,' an injured employee, not to provide a windfall. To hold otherwise would create a situation in which it is more advantageous, financially, to be injured than to be employed." (97 Ill. 2d at 52.)

Section 10 plainly provides that lost time is to be "deducted" before the number of weeks and parts thereof claimant worked are divided

into a claimant's earnings. Were we to accept claimant's interpretation of section 10, a windfall to claimant would result as claimant would receive substantially more per week than he actually earned while employed.

Our result in this case is supported by examination of a hypothetical situation which shows the undesirability of claimant's proposed formula. If a claimant were to have worked during 10 different weeks the year prior to injury, one day a week for eight hours, at a wage of $10 per hour, claimant's proposed formula for determining average weekly wage would work as follows. Claimant's total wages—$800 dollars—would be divided by 10, yielding 80, the number of actual hours worked. This number would be divided by 8, yielding 10, the actual number of days worked. 10, divided by 5, would equal 2, representing the number of full weeks claimant worked. Next, the total wages would be divided by 2 to come up with a figure of $400, the average weekly wage. This figure, however, is five times greater than the total weekly wages claimant ever received in any work week the previous year. Such a result clearly creates a situation where it is far more advantageous, financially, for the claimant to be injured than to be employed.

Here, the Commission divided the actual number of weeks during which claimant worked in whole or in part for the employer, 24, into the total amount of claimant's regular earnings for the preceeding year. We hold that neither the amount of the Commission's determination nor the method of determination under section 10 was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and H. LEWIS, JJ., concur.