LLOYD ZANGER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mike Tournear Construction Co., Appellee).

Fourth District (Industrial Commission Division)    No. 4—98—0892WC

Argued June 15, 1999.—Opinion filed August 5, 1999.

888

Thomas R. Lichten, of Thomas R. Lichten, Ltd., of Chicago, for appellant.

Daniel R. Egan, of Rusin, Patton, Maciorowski & Friedman, Ltd., of Chicago, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Lloyd Zanger appeals from the order of the circuit court of Adams County confirming the decision of the Illinois Industrial Commission (Commission). Respondent employer is Mike Tournear Construction Company. The arbitrator awarded claimant temporary total disability in the amount of $104 per week for $53^2/_7$ weeks (820 ILCS 305/8(b) (West 1996)) and $88.90 per week for 94.75 weeks for permanent partial disability due to loss of use of the right foot to the extent of 45% and 5% of the man as a whole (820 ILCS 305/8(e)(11), (d)(2) (West 1996)). The arbitrator denied claimant's claim for payment of a $236.46 medical bill from Quincy Medical Group for treatment on August 14, 1996. The Commission modified the decision of the arbitrator by awarding the claimant the $236.46 in medical expenses (820 ILCS 305/8(a) (West 1996)) and affirmed the remainder of the arbitrator's decision.

The issue on appeal is whether the Commission finding that claimant's average weekly wage was $104 was against the manifest weight of the evidence. We affirm. Only those facts necessary to an understanding of this court's disposition will be discussed.

Claimant testified that on February 22, 1993, while working for respondent doing carpentry work constructing a pole barn machine shop, a gust of wind broke loose the side he was working on, pushing his ladder over backward and causing him to fall. At that time, he was being paid $8 per hour. He worked whenever weather permitted, and he maintained 13 hours per week. In that way, it did not "mess up" his unemployment. He received $300 per week in unemployment benefits. Every two weeks he reported what he was earning to the Department of Employment Services. He worked the agreed 13 hours per week every week beginning with the week ending January 9, 1993, through February 20, 1993. Exhibits were admitted into evidence showing his gross pay was $104 per week. The exhibits also demonstrated the wages of other employees of respondent.

He was previously employed by Huck Fixture Company (Huck Fixture) in January 1991 and was laid off by Huck Fixture in September 1992. Claimant attempted to testify that a 1992 W-2 form showed he earned $21,788.43 while working at Huck Fixture in 1992. This exhibit was rejected prior to his testimony. Respondent objected to the testimony on the basis that it referred to a hearsay document that claimant was trying to authenticate. The objection was sustained. Claimant's attorney did not attempt to use the document to refresh claimant's recollection of how much he earned while working for Huck Fixture in 1992. No offer of proof was made.

The arbitrator calculated claimant's average weekly wage at $104 ($8 x 13 hours). 820 ILCS 305/10 (West 1996). The claimant's request to include unemployment compensation in the calculation was rejected by the arbitrator. The arbitrator found that unemployment compensation was neither earnings nor wages.

In affirming the arbitrator's decision as to average weekly wage, the Commission stated:

"The Commission relies on *Le Roy Jacobs v. Industrial Comm'n* (2nd Dist 1995)[,] 206 Ill. Dec. 945 at 948, 646 N.E.2d 312, 269 Ill. App. 3d 444[,] to affirm the Arbitrator's calculation of the average weekly wage. Petitioner worked for Huck Fixtures for 31 weeks of the 52 weeks preceding his accident. He was on indefinite layoff from Huck fixtures [*sic*] for at least five months when he was injured. His situation was much different from the sheet metal worker/claimant in the *Jacobs* case.

The Commission also notes that Petitioner's claimed wage

calculation is based on earnings going back to January 1, 1992, more than 52 weeks prior to his injury. Petitioner also bases his claim of nine months work for Huck on the calendar year rather than on the period 52 weeks before his injury. The Commission relies on the requirement of § 10 of the Act."

■ Claimant has the burden of proving, by a preponderance of the evidence, the elements of his claim (*Cook v. Industrial Comm'n*, 231 Ill. App. 3d 729, 731, 596 N.E.2d 746, 748 (1992)), including his average weekly wage. *Ricketts v. Industrial Comm'n*, 251 Ill. App. 3d 809, 810, 623 N.E.2d 847, 848 (1993). At the time of the injury, section 10 of the Workers' Compensation Act (Act) stated in relevant part:

"The basis for computing the compensation provided for in Sections 7 and 8 of the Act shall be as follows:

The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness[,] or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness[,] or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer. *** When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1996).

The Commission's wage determination is a question of fact that the reviewing court will not overturn on review unless it is contrary to the manifest weight of the evidence. *Ogle v. Industrial Comm'n*, 284 Ill. App. 3d 1093, 1096, 673 N.E.2d 706, 708-09 (1996).

In *Smith v. Industrial Comm'n*, 170 Ill. App. 3d 626, 631-32, 525 N.E.2d 81, 84 (1988), the Commission took the pay stubs and divided their number into claimant's regular earnings during the period. The Commission determined that the pay stubs were the only precisely verifiable means of establishing the number of weeks claimant worked. In *Smith*, the court explained:

> "[T]he only substantive difference between the computation of the average weekly wage of short or casual employments and other employments is that actual regular weekly earnings are used to determine the latter, whereas probable regular weekly earnings are used to determine the former. We therefore conclude that this language was chosen to correct the inequity which results when an injured seasonal or intermittent employee is given less generous benefits than his more steadily employed counterpart even though the seasonal or intermittent employee is deprived of the ability to take other employment which would have been available to him had he not been injured. (*Cf. Village of Clarendon Hills v. Industrial Comm'n* (1986), 149 Ill. App. 3d 994, 999, 501 N.E.2d 179, 182.) In short, section 10 as it now exists has nullified the distinction which previously existed between seasonal or intermittent employment and other employment." *Smith*, 170 Ill. App. 3d at 631, 525 N.E.2d at 84.

As this court noted in *Cook*, the issue in *Smith* concerned the method of calculating average weekly wage for a claimant whose employment did not extend to a period of one year preceding the injury. *Cook*, 231 Ill. App. 3d at 731, 596 N.E.2d at 747. In the case at bar, the Commission utilized the same method employed in *Smith*.

In *Cook*, claimant worked 24 weeks for respondent, but only 3 of those were full, 40-hour weeks. In calculating the average weekly wage, the Commission divided claimant's total earnings during that period, $10,266.42, by 24, the number of weeks claimant actually worked. This method of calculating the average weekly wage was affirmed. *Cook*, 231 Ill. App. 3d 729, 596 N.E.2d 746. The method applied in *Cook* is consistent with the method applied in the case at bar.

In *Ricketts*, the claimant worked eight hours per day for four days over a three-week period prior to being injured. To arrive at an average weekly wage, the Commission multiplied 8 (hours) by 4 (days); then multiplied the product by the union scale wage; and then divided by 15 working days, representing the three-week period during which claimant was partially employed. *Ricketts*, 251 Ill. App. 3d at 809-10, 623 N.E.2d at 847. The Commission's method of calculating the average weekly wage was upheld. *Ricketts*, 251 Ill. App. 3d at 810-12, 623 N.E.2d at 848-49. *Ricketts* is distinguishable from the case at bar

because, by agreement, claimant consistently worked no more than 13 hours per week for a number of weeks prior to injury.

●2 Claimant contends unemployment benefits should be treated as though they were earnings from a second job. Claimant cites no legal authority for that proposition. Unemployment benefits are excluded from the calculation of average weekly wage. *Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n*, 180 Ill. App. 3d 885, 893, 536 N.E.2d 1008, 1014 (1989); see also *Strand v. Hansen Seaway Service, Ltd.*, 614 F.2d 572, 576 (7th Cir. 1980) (unemployment compensation does not constitute "earnings" under section 10 of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 910 (1976))); 2 A. Larson & L. Larson, Workers' Compensation § 60.12, at 10—179 (1999). Section 10 of the Act requires benefits be computed based on "the actual earnings of the employee in the employment in which he was working at the time of the injury." 820 ILCS 305/10 (West 1996). The purpose of the Unemployment Insurance Act is to provide security for and alleviate burdens of involuntarily unemployed workers and their families (820 ILCS 405/100 (West 1996)), and unemployment benefits are paid "with respect to *** unemployment" (820 ILCS 405/202 (West 1996)).

■ Claimant's primary argument is that the Commission improperly excluded from its computation the $21,788.43 claimant earned from Huck Fixture in 1992. The W-2 form was rejected as an exhibit. He tried to testify from the exhibit, but respondent's objection to that testimony was sustained, and no issue on appeal concerns whether these evidentiary rulings were proper. Claimant's attorney did not attempt to use the W-2 form to refresh claimant's recollection and did not make an offer of proof. As a result, in the record before this court, no evidence shows claimant's earnings at Huck Fixture during the 52-week period prior to the injury could be considered in the calculation even if such consideration was appropriate.

In addition, the Commission found that the wages from Huck Fixture could not be considered in the calculation of average weekly wage. Although the average weekly wage is calculated over a 52-week period, the earnings considered are those from the employment in which claimant was working when injured. The claimant did not work after his layoff from Huck Fixture in September 1992 until his employment with respondent, which began in the week ending January 9, 1993.

As found by the Commission, *Jacobs* does not support claimant's position. In *Jacobs*, the concurrent employment exception in section 10 of the Act was applied:

> "We conclude that section 10 of the Act was intended to apply to situations where, as here, (1) claimant was employed as a sheet

metal worker for most of the 52 weeks prior to his injury except for two short layoff periods that are common in the industry, (2) his part-time job at Village Apartments was a supplement to his regular work and primary source of income as a sheet metal worker, (3) Village Apartments was aware of claimant's concurrent employment as a sheet metal worker, and (4) claimant was readily available and subject to recall for work as a sheet metal worker even though at the time of his injury he had been temporarily laid off for two or three weeks." *Jacobs*, 269 Ill. App. 3d at 448, 646 N.E.2d at 315.

In *Jacobs*, the Commission found the evidence supported a basis for concurrent employment. Here, the testimony does not establish that claimant worked for both employers concurrently. Unlike in *Jacobs*, claimant did not work for Huck Fixture and respondent concurrently at any time prior to injury. The Commission's finding of no concurrent employment was not against the manifest weight of the evidence.

■ Claimant also makes an argument that he should be treated as a seasonal worker in this case. Although claimant only worked for respondent for a few weeks prior to injury, no evidence showed that his employment with respondent was seasonal. Claimant attempted to testify that he had an agreement with respondent to work full-time when weather permitted. Respondent's hearsay objection to that testimony was sustained. Again, claimant raises no issue on appeal concerning the evidentiary ruling.

In *Illinois-Iowa Blacktop*, the method employed for calculating the average weekly wage for the injured construction worker was explained as follows:

"In the instant case, the petitioner 'lost five or more calendar days during such period,' and, as we read the record, we find that the petitioner was in fact underpaid during the 52 weeks preceding his injury. Accordingly, the arbitrator, as approved by the Commission and the circuit court, used the hourly wage he was supposed to have been paid under his contract, from time to time, calculated what he should have earned during the preceding 52 weeks based upon the number of nonovertime hours he worked, and divided the total by the 20 weeks he actually worked to arrive at an average weekly wage of $511.95." *Illinois-Iowa Blacktop*, 180 Ill. App. 3d at 889-90, 536 N.E.2d at 1011-12.

In *Illinois-Iowa Blacktop*, the Commission's determination of average weekly wage was upheld.

■ Neither the arbitrator nor the Commission, in adopting the arbitrator's finding, discusses section 10. It can be inferred that the Commission applied that portion of section 10 that states "[w]here the

employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed." 820 ILCS 305/10 (West 1996). Claimant, while arguing he is a seasonal employee, does not specifically argue that the method used in *Illinois-Iowa Blacktop* (the second method set out in section 10 of the Act) should be used in this case. Claimant would have this court direct the Commission to apply a modified version of the fourth method of computation for average weekly wage specified in section 10 of the Act. However, as stated before, the claimant determined the hours per week he would work. The Commission's decision adopting the arbitrator's determination of benefits is not against the manifest weight of the evidence. As in *Illinois-Iowa Blacktop*, the claimant's average weekly wage was determined by the amount he was to be paid pursuant to his agreement, calculated by what he would have earned by the weeks he actually worked. The Commission applied the standard immediately preceding the sentence that defendant seeks to apply. As a result, the Commission implicitly found that it was not impractical to compute the average weekly wage "as above defined."

We note that claimant does not want to calculate the average weekly wage on the basis of what would have been earned by a person in the same grade, employed at the same work for each of the prior 52 weeks, "for the same number of hours per week" (820 ILCS 305/10 (West 1996)) by the same employer. Claimant wants to increase his average weekly wage to that of other employees of respondent who worked more hours, sometimes as much as 40 hours per week.

If the fourth method for calculating average weekly wage contained in section 10 of the Act is applied to the facts of this case, it would limit the calculation to the 13 hours per week claimant was actually working. Because claimant's argument uses the $8-per-hour rate, as long as the 13-hour-per-week time element is utilized, the results of the application of the fourth method would be the same as reached by the Commission in this case, *i.e.*, $104 per week. The fourth method of calculating average weekly wage included in section 10 of the Act does not authorize crediting claimant with hours he did not work simply because other employees worked additional hours. What claimant wants is substantially more than the slight windfall to the employee that the statute might authorize. See *D.J. Masonry Co. v. Industrial Comm'n*, 295 Ill. App. 3d 924, 933-34, 693 N.E.2d 1201, 1207-08 (1998); *Cook*, 231 Ill. App. 3d at 733, 596 N.E.2d at 749.

The determination of the average weekly wage by the Commission in this case was not against the manifest weight of the evidence. The

order of the circuit court of Adams County confirming the Commission's decision is affirmed.

Affirmed.

RAKOWSKI, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.