RONALD SYLVESTER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Acme Roofing and Sheet Metal Company, Appellee).

Fourth District (Industrial Commission Division)    No. 4—99—0363WC

Argued January 13, 2000.—Opinion filed June 28, 2000.—Rehearing denied August 3, 2000.

Mike McElvain, of Law Office of Mike McElvain, of Bloomington, for appellant.

Robert T. Newman, of Garofalo, Schreiber & Hart, Chartered, of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On March 20, 1992, claimant, Ronald W. Sylvester, was injured while working for Acme Roofing and Sheet Metal Company. On June 4, 1997, an arbitrator determined, *inter alia*, that claimant's average weekly wage prior to his accident was $368.43. On November 13, 1998, the Industrial Commission (Commission) affirmed the arbitrator's determinations. On April 14, 1999, the circuit court confirmed the Commission. Claimant appeals, arguing that the Commission erred with respect to its calculation of claimant's average weekly wage. We agree and reverse and remand.

This court rendered an opinion affirming the circuit court's order. Claimant filed a petition for rehearing. We now deny the petition for rehearing but withdraw our opinion filed May 2, 2000, and by this opinion reverse the circuit court of McLean County.

On March 20, 1992, claimant fell approximately 16 feet from the

bed of a truck, sustaining serious injuries. His right leg was amputated below the knee and he sustained injury to his left foot. The arbitrator found that claimant lost 100% of his right leg and 65% of his left foot. Claimant received $560 per week in temporary total disability benefits (TTD) for 180 weeks. For the next 50 weeks, Acme paid claimant $228 per week in TTD benefits.

Claimant testified that he was employed by respondent for 19 years and, at the time of injury, was a roofing foreman earning $21 per hour. If the weather permitted and the respondent had work available, claimant would work. It is uncontradicted that he was on call with respondent if work was available, he did not call respondent for work, respondent called claimant, he had no other employment, and he was not self-employed. The wage summary confirms that claimant would be called to work five-hour stints during the time when full-time work was not available and claimant was receiving unemployment compensation. Although the parties do not agree as to the meaning of the collective-bargaining agreement, they do agree that a workweek is 40 hours. During the winter season, claimant regularly worked less than 40 hours and received unemployment compensation. As a condition to receiving unemployment compensation, claimant testified that he could work no more than five hours per week. The payroll records verify that he generally worked for respondent, while receiving unemployment compensation, performing emergency repairs or patching leaks, until the weather broke and he could return.

Claimant submitted a wage summary in which he calculated his average weekly wage at $695.75. Claimant did not testify as to the formula that he used to calculate this figure. However, it appears from claimant's brief and the wage summary submitted by both parties that claimant counted the total number of days worked during the previous 52 weeks, which totaled 131. Claimant then divided 131 by 5 (representing a full workweek) to arrive at 26.2. Next, claimant divided what he perceived as his total earnings for the previous 52 weeks, $18,228.55, by 26.2, and arrived at an average weekly wage of $695.75.

On May 30, 1997, the arbitrator entered her award. The arbitrator found that, during the year prior to claimant's injury, Acme paid claimant for working 48 of 52 weeks. The arbitrator determined that claimant earned $17,684.41 during this period and divided that amount by 48, arriving at an average weekly wage totaling $368.43. On November 13, 1998, the Commission affirmed and adopted the decision of the arbitrator. On April 14, 1999, the circuit court confirmed the determination of the Commission. On May 5, 1999, claimant filed a notice of appeal to this court.

■ On appeal, claimant argues that the Commission's determina-

tion of claimant's average weekly salary was against the manifest weight of the evidence. Claimant has the burden of proving, by a preponderance of the evidence, the elements of his claim, including his average weekly wage. *Zanger v. Industrial Comm'n*, 306 Ill. App. 3d 887, 890, 715 N.E.2d 767, 769 (1999). The Commission's determination of claimant's wages is a question of fact that a reviewing court will not disturb unless it is contrary to the manifest weight of the evidence. *Zanger*, 306 Ill. App. 3d at 890, 715 N.E.2d at 769. The basis for computing a claimant's average weekly earnings is governed by section 10 of the Workers' Compensation Act (Act) (820 ILCS 305/10 (West 1998)), which states in relevant part:

> "The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness[,] or disablement excluding overtime, and bonus divided by 52; but if the injured employee lost 5 or more calendar days during such period, whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury, illness or disablement was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer."

Claimant argues that the Commission misinterpreted the language of the statute with regard to partial weeks worked and ignored the clear meaning of the phrase "parts thereof." 820 ILCS 305/10 (West 1998). He also argues that credence must be given to "the number of weeks and parts thereof remaining after the time so lost has been deducted" (820 ILCS 305/10 (West 1998)).

*Illinois-Iowa Blacktop, Inc. v. Industrial Comm'n*, 180 Ill. App. 3d 885, 536 N.E.2d 1008 (1989), reviewed the legislative history of section 10 of the Act. Four other cases have also addressed the issue in the context with which we are dealing.

In *Peoria Roofing & Sheet Metal Co. v. Industrial Comm'n*, 181 Ill. App. 3d 616, 537 N.E.2d 381 (1989), the claimant was a roofer whose work schedule was significantly affected by the weather. In the previous 52 weeks, claimant worked a total of 134 days in 43 calendar weeks (averaging slightly more than 3 days per week). The Commission determined the average weekly wage by dividing claimant's total earnings for the previous 52 weeks by one-fifth the number of calendar days that claimant worked that year. The circuit court reversed, and on appeal, the employer argued that section 10 did not provide for " 'fictional weeks' (*i.e.*, consolidated five-day groups of days worked), and that the language of section 10 should not be mechanically used to reach that result." *Peoria Roofing*, 181 Ill. App. 3d at 619, 537 N.E.2d at 383. We reversed the circuit court and reinstated the Commission's determination, stating:

"The [employer's] interpretation of the emphasized section 10 language strain[ed] the plain meaning of the phrase 'and parts thereof.' It effectively equates all calendar weeks during which [claimant] did any work, regardless of how many days he worked during the week. Whereas one day is, in fact, only a fraction of a work week, the [employer] would seek to have one isolated day in a calendar week regarded as a 'week,' not as a fractional 'part thereof.'

Also, under the [employer's] analysis, section 10's provision for employees who 'lost 5 or more calendar days' is superfluous except for employees who 'lost' full calendar weeks of employment. Under the [employer's] analysis, any employee who 'lost 5 or more calendar days,' but nonetheless worked in every calendar week, would have his average wage calculated based on a 52-week year, just as under the initial provision of section 10." *Peoria Roofing*, 181 Ill. App. 3d at 620, 537 N.E.2d at 383-84.

Three years later, in *Cook v. Industrial Comm'n*, 231 Ill. App. 3d 729, 596 N.E.2d 746 (1992), we addressed this issue again. In *Cook*, claimant worked at least 1 day per week in 24 of the 52 weeks prior to his injury. During that period, claimant worked only 3 full, 40-hour weeks. The majority of weeks claimant worked less than 5 full days and less than 40 hours per week. The Commission divided claimant's total earnings for the previous 52-week period by 24, the number of weeks in which claimant actually worked. On appeal we found that claimant failed to provide the Commission with any "other documentary evidence [or] *** sworn testimony" relating to claimant's wages and noted the deferential standard accorded to the Commission's factual determination of average weekly wage. *Cook*, 231 Ill. App. 3d at 731, 596 N.E.2d at 747-48. We concluded that "[t]he only recourse to the Commission, based strictly upon the evidence before it, was to

divide claimant's total wages by the number of weeks claimant worked, as reflected in the evidence." *Cook*, 231 Ill. App. 3d at 731-32, 596 N.E.2d at 748.

In *Ricketts v. Industrial Comm'n*, 251 Ill. App. 3d 809, 623 N.E.2d 847 (1993), the Commission determined that claimant worked for four days over a three-week period. The Commission multiplied claimant's hourly wage of $14.85 by 32 hours, equaling total wages of $475.20, which it then divided by 3, to arrive at an average weekly wage of $158.40. On review, the circuit court reversed and found an average weekly wage of $594. We reversed the circuit court and reinstated the Commission's determination, again noting that claimant had the burden of establishing his weekly average earnings, that "[t]he evidence presented by claimant was less than clear or comprehensive," and "[c]laimant's testimony concerning his prior employment was, to say the least, equivocal and unsubstantiated." *Ricketts*, 251 Ill. App. 3d at 810, 623 N.E.2d at 848.

We also expressed concern as to improper windfall and rejected claimant's argument that the Commission misinterpreted the phrase "number of weeks or parts thereof" as contained in section 10, stating:

> "If this were true then the determination of the average weekly rate would, in virtually every case, be literally based upon the number of hours a less-than-'full-time' employee worked multiplied upward to fill out a complete 40-hour week—even if the employee never worked a 40-hour week during his entire life. Moreover, if the legislature intended such a result, there would be no need whatsoever for the alternative methods of calculating the wage provided by section 10 of the Act.
>
> Under the evidence presented in this case, the Commission's determination is consistent with the statute. When the employment is noncontinuous or less than 'full-time,' earnings may be divided by an entire workweek even if the employee worked only a portion of the week." *Ricketts*, 251 Ill. App. 3d at 812, 623 N.E.2d at 849.

In *D.J. Masonry Co. v. Industrial Comm'n*, 295 Ill. App. 3d 924, 929, 693 N.E.2d 1201, 1204 (1998), claimant testified that he worked a 40-hour workweek when the weather permitted and when work was available. However, long periods of time typically passed when he could not work. The Commission divided 204 (representing the total number of days claimant worked) by 5 (representing a full workweek) to reach 40.8 (representing the number of full workweeks). The Commission then divided $23,496.88 (representing claimant's total earnings over the previous 52 weeks) by 40.8, to arrive at an average weekly wage of $575.90. This figure yielded a compensation rate of $383.93 in weekly TTD benefits.

On appeal to this court, the employer argued that the Commission's calculation was erroneous and that $383.93 per week represented a windfall for claimant because $575.90 per week over 52 weeks totaled $29,946.80, which was $6,449.92 more than the $23,496.88 that he made over the previous 52-week period. We found that the Commission had sufficient evidence before it to compute claimant's earnings and that it properly "divided by the 'number of weeks and parts thereof remaining after the time so lost ha[d] been deducted.' " *D.J. Masonry*, 295 Ill. App. 3d at 933, 693 N.E.2d at 1207, quoting 820 ILCS 305/10 (West 1994). We further noted that the Commission's calculation comported with section 10 and was therefore not against the manifest weight of the evidence. *D.J. Masonry*, 295 Ill. App. 3d at 933, 693 N.E.2d at 1207. With regard to the issue of windfall, we found that the employer's figure of $29,946.80 was misleading insofar as claimant would not receive that amount. Rather, since claimant would receive TTD benefits of $383.93, his total benefits over 52 weeks would total $19,964.36. The Commission's award reasonably represented claimant's earning potential. *D.J. Masonry*, 295 Ill. App. 3d at 934, 693 N.E.2d at 1208.

■ We conclude that these cases, for the most part, are reconcilable. In each case, we conducted fact-specific inquiries and addressed whether the Commission's factual determination of claimant's average income was against the manifest weight of the evidence. Our central inquiry in all four of these cases was whether the Commission's calculation adequately and reasonably represented claimant's earning potential without awarding him or her a substantial windfall. See *D.J. Masonry*, 295 Ill. App. 3d at 934, 693 N.E.2d at 1208; see also *Village of Winnetka v. Industrial Comm'n*, 250 Ill. App. 3d 240, 244-45, 621 N.E.2d 150, 153 (1993) (comparing the Commission's findings to claimant's previous wages to determine whether it fairly represents claimant's earning power at the time of his injury). In each case, we found that the record evidence supported the Commission's factual determination, and we affirmed or reinstated its decision.

As previously stated, the purpose of section 10 is to "compensate, or 'make whole,' an injured employee[ ] [and] not to provide a windfall. To hold otherwise would create a situation in which it is more advantageous, financially, to be injured than to be employed." *Hasler v. Industrial Comm'n*, 97 Ill. 2d 46, 52, 454 N.E.2d 307, 310 (1983).

■ Section 10 provides the procedures to follow in determining average weekly wage and sets forth four options in making that determination based upon the facts presented.

The first method is to determine "the actual earnings of the employee in the employment in which he was working at the time of the

injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52." 820 ILCS 305/10 (West 1998). This method does not apply as the parties agree that claimant worked in only 48 weeks of the previous 52 weeks.

The second method concerns the employee who has "lost 5 or more calendar days during such period [(52 weeks prior to injury)], whether or not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted." 820 ILCS 305/10 (West 1998). We defined "time lost" in *Illinois-Iowa*, "to the extent not due to the fault of the employee." *Illinois-Iowa*, 180 Ill. App. 3d at 891, 536 N.E.2d at 1013.

The third method provides that "[w]here the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed." 820 ILCS 305/10 (West 1998).

The fourth method set forth in section 10 provides:

"Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury *** was being or would have been earned by a person in the same grade employed at the same work for each of such 52 weeks for the same number of hours per week by the same employer." 820 ILCS 305/10 (West 1998).

The average weekly wage of the claimant in this case is to be determined pursuant to the second method. We note first that the parties agree that claimant did not work 4 of the 52 weeks preceding the date of injury. The payroll records suggest the four weeks not worked were weeks ending November 10, 1991; February 21, 1992; February 28, 1992; and March 14, 1992. The respondent employer agrees that this is properly considered time lost and properly deducted.

In this case, the only evidence presented concerning average weekly wage was the testimony of the claimant, the payroll ledger statements with respect to claimant, the union contract, and W-2 statements.

In *Illinois-Iowa*, we stated that the primary factor in *Hasler* was the finding that the "on call" employee was not an intermittent employee but was "continuously employed." *Illinois-Iowa*, 180 Ill. App.

3d at 891, 536 N.E.2d at 1012. Section 10 was amended subsequent to *Hasler* to include additional factors in determining the average weekly wage. We further stated in *Illinois-Iowa* that section 10 "states that in all cases where the employee lost five or more days of work during the 52 weeks prior to the injury, the lost time *(to the extent not due to the fault of the employee)* should be deducted from the wage calculation denominator." (Emphasis added.) *Illinois-Iowa*, 180 Ill. App. 3d at 891, 536 N.E.2d at 1013.

The other weekly wage cases referred to herein were all fact specific. In *Cook* and *Ricketts*, we pointed out the failure or inadequacy of proof presented by the claimant as to his earnings and work schedule. In *Peoria Roofing* and *D.J. Masonry*, the evidence suggests that the second method of section 10 was followed.

The proof presented here follows the second method, that the claimant lost 5 or more days in the 52-week period. The evidence is clear that the time lost was not due to the fault of the employee. As stated above, the claimant worked only for respondent as a roofing foreman. He was on call to work at all times by respondent, never refused to work when called, had no other employment, and was not self-employed.

With respect to windfall, our decision does provide claimant with an income that is somewhat higher than he realized prior to his injury, but such an increase does not automatically put claimant in a situation more advantageous than the one prior to his injury, nor does it provide claimant with a substantial windfall as envisioned in *Hasler* and its progeny. In *Hasler*, claimant utilized a calculation method compensating him at approximately six times his preinjury annual income. *Hasler*, 97 Ill. 2d at 52, 454 N.E.2d at 310. In *Cardiff v. Industrial Comm'n*, 128 Ill. App. 3d 52, 55, 470 N.E.2d 1091, 1093 (1984), this court rejected an award nearly 10 times claimant's preinjury wage. Similarly, in *Cook*, we contemplated a situation wherein claimant could seek an average weekly wage five times his or her preinjury income. *Cook*, 231 Ill. App. 3d at 733, 596 N.E.2d at 749. As previously stated, a claimant's average weekly wage requires a fact-driven analysis. The decision of the Commission was against the manifest weight of the evidence.

For the foregoing reasons, we reverse the circuit court and remand this matter to the Commission for proceedings consistent with this opinion.

Reversed and remanded.

RAKOWSKI, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.