RENDERED: JUNE 11, 2015
TO BE PUBLISHED



# Supreme Court of Kentucky

2014-SC-000234-WC

JOSEPH JEWELL                                                                  APPELLANT


ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2013-CA-000850-WC
WORKERS' COMPENSATION BOARD NO. 11-WC-00091


FORD MOTOR COMPANY;                                               APPELLEES
HONORABLE JOHN B. COLEMAN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD


**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

Joseph Jewell (Jewell) appeals from the opinion of the Court of Appeals

holding that the administrative law judge (the ALJ) correctly excluded

unemployment compensation benefits when calculating Jewell's average weekly

wage (AWW). Having reviewed the record and the arguments of the parties, we

affirm.

## I. BACKGROUND.

Jewell suffered a work-related injury on December 4, 2009, for which he

timely filed a claim. Based on the evidence, the ALJ determined that: Jewell

had an AWW of $968.20; he suffered a period of temporary total disability,

entitling him to benefits at the rate of $645.47 per week; and he has a 5.95%

1

permanent partial disability rating, entitling him to benefits at the rate of $30.98 per week. The only issue before us is whether the ALJ appropriately excluded unemployment compensation benefits when he calculated Jewell's AWW. Therefore, we only set forth in detail the facts related to that issue.

During layoff periods, Ford completes the necessary paperwork for its employees to receive unemployment compensation benefits. After an employee begins receiving unemployment compensation benefits, Ford makes supplemental or "sub-pay" payments sufficient to increase the amount the employee receives while laid off to 95% of his or her base pay rate.

Kentucky Revised Statute (KRS) 342.140(1)(d) provides that an hourly employee's average weekly wage is based on his or her earnings during the highest quarter in the fifty-two week period preceding the injury. Based on the AWW form supplied by Ford, Jewell's highest quarter was the thirteen-week period immediately preceding the injury. That quarter included one week when Jewell was laid off from work.[1] When calculating Jewell's AWW, Ford added a zero for the lay-off week resulting in an average weekly wage of $937.43. Jewell, on the other hand, added $400.00 in sub-pay and $373.00 in unemployment compensation benefits for that week, resulting in an average weekly wage of $996.89. The ALJ found that sub-pay should be included in the AWW calculation but that unemployment compensation benefits should

---

[1] In the first, second, and third quarters, Jewell was laid off for nine weeks, eight weeks, and five weeks respectively, resulting in lower total wages for those quarters.

2

not. Thus, the ALJ added $400.00 in sub-pay for the lay-off week and determined that Jewell's AWW was $968.20.

Both parties appealed to the Workers' Compensation Board (the Board), which affirmed the ALJ's finding that unemployment benefits should not be included in the AWW calculation. However, the Board reversed the ALJ's finding that sub-pay should be included. Jewell appealed to the Court of Appeals, which reversed the Board's finding regarding sub-pay but affirmed the Board's finding regarding unemployment benefits. Jewell then appealed to this Court arguing that unemployment benefits should be included in the AWW calculation. Ford is not contesting the inclusion of sub-pay in that calculation; therefore, we do not address the appropriateness of its inclusion. For the following reasons, we disagree with Jewell and affirm the Court of Appeals's decision.

## II. STANDARD OF REVIEW.

The issue presented is one of statutory interpretation, which we review *de novo*. *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013).

> We presume when interpreting a statute that the legislature intended for it to mean exactly what it says. Although ambiguous language must be interpreted based on legislative purpose and intent, unambiguous language requires no interpretation.

*Chrysalis House, Inc. v. Tackett*, 283 S.W.3d 671 (Ky. 2009). Furthermore, we presume that the General Assembly intended for a statute to be construed as a whole, and for all of its parts to have meaning. *Hall v. Hospitality Resources,*

3

*Inc.*, 276 S.W.3d 775 (Ky. 2008); *Lewis v. Jackson Energy Cooperative Corporation*, 189 S.W.3d 87 (Ky. 2005).

### III. ANALYSIS.

"Wages" are "money payments for services rendered, [and] the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer to the extent the gratuities are reported for income tax purposes." KRS 342.140(6).[2] The Court of Appeals determined that unemployment compensation benefits are not money payments for services rendered. We agree, as noted by the Court of Appeals, that such payments to a laid off employee are made because the employee is not rendering any service to the employer, not because he or she is rendering a service to the employer.

Furthermore, with the exception of gratuities, wages are "received from the employer." Unemployment compensation benefits are not received from the employer but, as noted in Ford's benefit plan document, are "State System Benefit[s]." In fact, Ford cannot calculate sub-pay until after an employee begins receiving unemployment compensation benefits because Ford does not know how much unemployment compensation the employee will receive. Certainly, if Ford was paying that benefit to the employee, it would know the amount of the payment. Therefore, based on the unambiguous language of KRS 342.140(6), unemployment compensation benefits are not wages.

---

[2] The term wages is similarly defined in KRS 342.0011(17).

Despite the unambiguous language of the statute, Jewell argues that unemployment compensation benefits should be included as wages because: (1) employers are entitled to a credit for unemployment benefits pursuant to KRS 342.730(5); (2) unemployment compensation benefits, like wages, are paid directly to the employee and taxable; and (3) Ford uses unemployment compensation benefits "to compensate their employees instead of paying the contractual base rate." We address each argument below.

First, KRS 342.730(5) provides that "[a]ll income benefits pursuant to this chapter otherwise payable for temporary total and permanent total disability shall be offset by unemployment insurance benefits paid for unemployment during the period of temporary total or permanent total disability." This part of KRS Chapter 342 addresses liability for benefits due to disability that results after an injury has occurred. It has nothing to do with AWW, which is based on wages earned before an injury occurred.

Second, Jewell is correct that unemployment compensation is paid directly to the employee and taxable, just as wages are. However, as set forth above, it is, in part, the *source* of a payment that determines whether that payment is considered wages. Wages, excluding gratuities, are "received from the employer." The unemployment compensation system is funded, in part, by employer assessments; however, funds in the system are "commingled and undivided," KRS 341.490(2), and benefits are "paid through employment offices, or such other agencies as may be designated by regulation." KRS 341.380(1). Because unemployment compensation benefits are not directly

5

traceable to an individual employer and are not directly paid to a claimant by an individual employer, they are not "received from [an] employer" and are not wages. Furthermore, because unemployment compensation benefits are not wages, whether they are taxable is irrelevant.

Third, Jewell states that Ford is obligated by its contract with the Union to pay 95% of base pay during lay-offs. He insinuates that Ford nefariously uses unemployment compensation in order to meet that obligation. Jewell has not cited to where in the record we can find the actual contract to which he refers. Instead, he cites us to the "Your Employee Benefits" document to support his argument. That document states that employees are entitled to weekly "Regular Benefits" based on 95% of weekly after-tax pay less any state unemployment benefits. It does not state that <u>Ford</u> is obligated to pay 95% of weekly after-tax pay. In fact, it says just the opposite. If this document and Ford's method of calculating "Regular Benefits" are not in keeping with the collective bargaining agreement, that is an issue for a different forum. Furthermore, whether Ford takes, or does not take, a credit for unemployment compensation benefits in calculating "Regular Benefits" does not change the nature of the unemployment compensation benefits for workers' compensation purposes. Those benefits are not payments for services rendered and they are not received from the employer; therefore, they are not wages.

Finally, we note, as did the Court of Appeals and the Board, that numerous other jurisdictions and authorities state that unemployment compensation should be excluded from the calculation of wages. *See In re*

6

*Mike's Case*, 73 Mass. App. Ct. 44, 49, 895 N.E.2d 512, 515 (2008) (unemployment benefits not created or contemplated by the workers' compensation statute); *Reifsnyder v. W.C.A.B. (Dana Corp.)*, 584 Pa. 341, 359-60, 883 A.2d 537, 548 (2005) ("The Workers' Compensation system operates to insure a worker against the economic effects of a workplace injury, not against the economic effects of variations in the business cycle"); *Zanger v. Indus. Comm'n*, 306 Ill. App. 3d 887, 892, 715 N.E.2d 767, 770 (1999) (benefits to be based on actual earnings from employment at time of injury); and Arthur Larson, *Larson's Workers' Compensation Law*, § 93.01(2)(a) (2012) ("Unemployment benefits received during "down-times" during the year prior to the injury, while otherwise employed by the employer, are not 'wages' and, accordingly, are not used to compute the average weekly wage.").

Although not bound by the preceding, we agree with the reasoning contained therein. Our workers' compensation statute, like Massachusetts', is separate and apart from our unemployment statute. Our workers' compensation system, like Pennsylvania's, is designed to compensate for injuries, not economic fluctuations. And our wages, like Illinois's, are based on actual earnings from employment, not payment made to the unemployed.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals's holding that the ALJ correctly excluded unemployment compensation benefits when he calculated Jewell's average weekly wage.

All sitting. All concur.

7

COUNSEL FOR APPELLANT:

Charles E. Jennings

COUNSEL FOR APPELLEE
FORD MOTOR COMPANY:

Peter J. Glauber
Phillip J. Reverman, Jr.
Elizabeth M. Hahn
Boehl, Stopher & Graves, LLP