LEROY JACOBS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Village Apartments, Appellee).

Third District (Industrial Commission Division)   No. 3—94—0372WC

Opinion filed February 3, 1995.

Craig L. Kavensky, of Winstein, Kavensky & Wallace, of Rock Island, for appellant.

Gregory P. Sujack and Kerrie A. Lethbridge, both of Garofalo, Hanson, Schreiber & Vandlik, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Claimant, Leroy Jacobs, brought a worker's compensation claim against his employer, Village Apartments, for injuries sustained on December 3, 1990. The arbitrator found that claimant was concurrently employed by Village Apartments and as a "journeyman" sheet metal worker. In awarding claimant benefits, the arbitrator combined wages from both jobs to reflect an average weekly wage of $619.74. The Industrial Commission (Commission) affirmed. The circuit court of Whiteside County reversed, finding that claimant was not concurrently employed at the time of his injury and therefore his benefits were to be based only on an average weekly wage of $141 from his job at Village Apartments. We reverse.

At the arbitration hearing, claimant stated that he lived in Erie and worked for Village Apartments as a maintenance man. Claimant injured his hand on December 3, 1990, while operating a snow blower for Village Apartments. Claimant sustained severe lacerations which eventually required amputation of the distal aspect of the second and third fingers of his left hand. A subsequent infection in his hand necessitated a second amputation to the PIP joint of his third finger in August 1991.

Claimant testified that he was also employed as a union or "journeyman" sheet metal worker. Claimant said he worked as a sheet metal worker throughout most of the year preceding his injury and earned $24,894.85. Claimant testified that he had been laid off from his sheet metal work for two or three weeks when the accident occurred in December 1990. Claimant said that it was not unusual for sheet metal workers to be laid off for a few weeks in between jobs

and that he was at all times subject to recall. He stated that he had been a member of the sheet metal workers' union since 1979 and his dues were paid at the time of his injury. Claimant said he was always on the union hall list to be called for sheet metal jobs if he was not currently working. Claimant testified that it was customary to finish one sheet metal job and then go on to another sheet metal assignment. However, he admitted that if no sheet metal jobs were available, such workers would have to go on unemployment.

Claimant testified that he worked at Village Apartments whether he was working or laid off from his sheet metal jobs. The record is undisputed that Village Apartments knew that claimant was employed as a sheet metal worker. Claimant testified that he was called to work immediately after he was released to work on July 16, 1991, but he experienced difficulty in performing his job and his fingers became infected again. Claimant had to turn down another sheet metal work call on August 14, 1991, since he had just had his second amputation surgery on August 13, 1991.

The arbitrator found that claimant was concurrently employed by Village Apartments and as a sheet metal worker at the time of his injury. Accordingly, the arbitrator combined claimant's wages from both jobs and computed an average weekly wage of $619.74. The arbitrator awarded $413.16 for $40^4/_7$ weeks temporary total disability, $93.15 for reasonable and necessary medical expenses, and $340.37 for 76 weeks for permanent and complete loss of claimant's left hand to the extent of 40% thereof. The Commission affirmed this decision. The trial court reversed, finding that claimant was not concurrently employed at the time of his injury and that his benefits should be based on an average weekly wage of $141 from his work at Village Apartments.

Claimant's sole argument on appeal is that he was concurrently employed on the date of his injury pursuant to section 10 of the Workers' Compensation Act (Act), which provides in relevant part:

> "The compensation shall be computed on the basis of the 'Average weekly wage' which shall mean the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury. *** When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1992).

As both parties note, the Act does not define "concurrently";

thus, our decision turns on what this court determines the word to mean in this context. The underlying purpose of the Act is to provide financial protection for workers whose earning power is interrupted or terminated due to injuries arising out of their employment. (*Hardin Sign Co. v. Industrial Comm'n* (1987), 154 Ill. App. 3d 386, 389.) It is well settled that the Act should be liberally construed to accomplish its purposes and objectives. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 529.) We conclude that claimant in the instant case has fully complied with all the provisions of section 10 of the Act and that the Commission correctly affirmed the arbitrator's finding that claimant is eligible for an award of the average wage amount of both his work positions.

The record is undisputed that Village Apartments knew that claimant was a sheet metal worker. Claimant testified that he worked for Village Apartments even when he was not laid off from sheet metal work. Although sheet metal workers are subject to short layoff periods between jobs, we believe that claimant's employment relationship as a union sheet metal worker was not severed during his layoff period or at the time of the accident. Claimant testified that he had only been laid off about two or three weeks at the time of the injury and was subject to recall by the union at any time. He was a member in good standing of the union and the record is undisputed that he worked most of the 52 weeks before his injury. Claimant returned to work as a sheet metal worker as soon as he was released to work after his injury. Claimant also stated that he was called back to work for a sheet metal job after the accident and that he had to turn it down because of his injury.

Respondent argues that claimant was not employed as a sheet metal worker at the time of his injury and that claimant desires to get "as much money as possible without regard to the consequences that visit an employer, such as increased insurance premiums, inability to determine risks and costs, and a disinclination to hire laid off workers." In his treatise on worker's compensation laws, Professor Larson discusses the different doctrines employed by the States on the issue of whether to combine earnings when an employee is concurrently employed at the time of injury. Professor Larson notes:

> "[F]airness to the employee and fairness to the employer-carrier are not symmetrical, and cannot be judged by the same standards. To this one employee, this one loss is everything—he has nothing against which to offset it. To the employer, and even more to the carrier, this is just one case among many. The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be

reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees in a concurrent-employment situation, when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like workmen's compensation. ***

For the injured workman, *** [h]e, and he alone, bears the burden to being reduced to $20 a week when his actual earnings may have been five times that much. That is real unfairness. By comparison, the 'unfairness' to the employer, in the form perhaps of a slight premium increase, eventually offset by the times he will benefit by the same rule, is an artificial construct with no genuine content." 2 A. Larson, Workmen's Compensation § 60.31(c), at 10—751—52 (1992).

We conclude that section 10 of the Act was intended to apply to situations where, as here, (1) claimant was employed as a sheet metal worker for most of the 52 weeks prior to his injury except for two short layoff periods that are common in the industry, (2) his part-time job at Village Apartments was a supplement to his regular work and primary source of income as a sheet metal worker, (3) Village Apartments was aware of claimant's concurrent employment as a sheet metal worker, and (4) claimant was readily available and subject to recall for work as a sheet metal worker even though at the time of his injury he had been temporarily laid off for two or three weeks.

We reverse the decision of the circuit court of Whiteside County and reinstate the Commission's decision that claimant's benefit amount is to be $619.74, which represents the combined average weekly wage from his regular employment as a union sheet metal worker and his job as a maintenance worker at Village Apartments.

Reversed.

McCULLOUGH, P.J., and RAKOWSKI, McCUSKEY, and RAR-ICK, JJ., concur.