LARRY FLYNN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Utica Township, Appellee).

Third District (Industrial Commission Division)   No. 3—02—0603WC

Opinion filed June 16, 2003.—Rehearing denied July 18, 2003.

GOLDENHERSH, J., dissenting, joined by HOLDRIDGE, J.

Terence B. Kelly, of Thomson & Weintraub, of Bloomington, for appellant.

Richard A. Kimnach, of Kane, Doy & Harrington, of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant Larry Flynn appeals from the order of the circuit court of La Salle County confirming a decision of the Illinois Industrial Commission (Commission). The arbitrator found that claimant sustained an accidental injury arising out of and in the course of his employment with respondent Utica Township on January 17, 1997; awarded claimant $7^1/_7$ weeks' temporary total disability (TTD) (820 ILCS 305/8(b) (West 1996)); determined that claimant's average weekly wage for TTD was $56 per week based on the rate of pay in the job he was performing for respondent at the time of injury; and awarded claimant a wage differential benefit of $362.36 per week for the duration of the disability (820 ILCS 305/8(d)(1) (West 1996)) based on two-thirds of the difference between the $360 per week claimant was earning at the time of the arbitration hearing and the $903.60 he could have earned as a truck driver.

The Commission, in a decision written by Commissioner Diane Dickett Smart, with two commissioners dissenting in part and concurring in part, modified the arbitrator's decision. The majority of the Commission determined that claimant was not concurrently employed with another employer at the time of injury and his average weekly wage was $56 per week. As a result, the Commission further found that section 8(d)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)(1) (West 1996)) was not applicable to this case and awarded claimant $56 per week for 160 weeks for loss of use of 100% of the left eye due to enucleation of the eye. 820 ILCS 305/8(e)(13) (West 1996). Commissioner Douglas F. Stevenson dissented on the basis that claimant was an independent contractor and not an employee of respondent, but supported the finding that, if it was employment, this was serial rather than concurrent employment. Commissioner Stevenson stated that, if there was employment, he agreed with the modification of the award. Commissioner Barbara A. Sherman also concurred in part and dissented in part. She agreed with the finding of an accidental injury arising out of and in the course of claimant's employment with

respondent, but dissented on the concurrent employment issue and the determination that section 8(d)(1) of the Act was not applicable.

On appeal, the issues are whether claimant (1) was concurrently employed and his average weekly wage should have been calculated based on consideration of wages from both jobs, not just his employment with respondent, and (2) proved entitlement to a wage differential award. We affirm.

Claimant, a 44-year-old farmer/truck driver, testified that on January 16, 1997, Jerry Cary, respondent's road commissioner, contacted claimant by telephone to inquire whether respondent could rent claimant's large snowblower. The snowblower attached to claimant's tractor. When claimant agreed, Cary asked if he could hire claimant to operate the machine. Claimant agreed and took the machine to Lone Tree Road. Cary and three other of respondent's employees were there. Because the snow continued to blow and drift, Cary asked claimant to stop and return the next day. On January 17, claimant arrived at Lone Tree Road at 7 a.m. Cary and the same three employees were at the site. They cleared the road in a couple of hours and proceeded to Jim Doherty Road. After Jim Doherty Road was cleared, Cary asked respondent to go to the Seneca Manor subdivision. While working at Seneca Manor, the shaft of the snowblower sheared. Claimant had repaired this malfunction in the past, and he went to his own garage for tools and a new part. While using the chisel, it popped up and struck him in the eye.

Surgeries were performed on January 17, 1997, and January 30, 1997. A surgical enucleation of the eye was performed. Claimant was subsequently fitted with a prosthetic eye. Due to loss of sight in the left eye, he was unable to get licensed by the Department of Transportation for driving a truck in 1998.

Claimant had been employed by Dick Nelson since about 1979. From that time through 1997, he was employed on a seasonal basis by one of Nelson's asphalt companies, La Salle County Asphalt or Advanced Asphalt. Claimant would be off work as an asphalt truck driver through the winter months, working from March or April through November or December, depending on the weather. He was a member of Illinois Conference of Teamsters, Local 722 (Teamsters Local No. 722), and during the winter layoffs he signed onto the union's "out of work" list. Nelson or one of his supervisors would generally call him directly to return to work each spring. He signed the out of work list in case any work was available with any other companies during the winter and to hold his place on the list in case Nelson's companies went out of business. Claimant resided on a farm that he rented from his mother. He did not file for unemployment benefits

during winter layoffs because he raised livestock that he sold and he would not have qualified for unemployment benefits. Claimant owned a tandem truck. When working for Nelson's companies, he was paid an hourly wage as well as for the hourly use and rental of the truck. Although no records in evidence demonstrated how claimant's pay was apportioned, claimant testified that his hourly pay of $46 included $19.65 for wages and $26.35 for use of the truck. In the spring, claimant was generally contacted by Nelson or one of his supervisors rather than being hired off the union's out of work list. He occasionally operated Nelson's company equipment, such as a water truck, and loaded his own truck a couple of times a day. Claimant received a 1099 form for nonemployee income from Nelson's companies, and those companies did not deduct or withhold taxes or "FICA" from his income. Claimant had not been called back to work for Nelson in January or February between 1993 and 1997, but had been called back in March 1994 to haul debris. He also had been called in the wintertime for private asphalt work. Nelson's companies never paid or reimbursed claimant for truck repairs, gas, oil, or insurance. He paid his own union dues. Claimant was bound by the collective bargaining agreement, and to his knowledge, so was Nelson. Claimant signed the union out of work list in 1994, 1995, and 1997, and to the best of his knowledge he did so in 1996. If the union records showed he did not sign in 1996, he would not dispute that.

The Teamsters Local 722 out of work lists were placed into evidence and showed that claimant signed the lists in November 1994, November 1995, and December 1997, but not at any time in 1996. The collective bargaining agreement between the Teamsters and various contractors was also placed in evidence. It indicated that, at the time of the arbitration hearing, claimant was scheduled to earn $22.59 per hour.

Claimant testified that, three or four days after the accident, Sue Calkins, respondent's treasurer-secretary, contacted claimant and asked where his check should be sent. Although Cary said he would pay claimant $50 per hour for the use of the machine and $25 per hour as wages, she wanted to know if it was okay to pay him $67 per hour for the machine and $8 per hour for wages because that was what other employees of respondent earned. Claimant agreed and was paid for seven hours work. The W-2 form designated the income as "wages/other compensation," and showed that deductions were made, although claimant was unclear for what the deductions were made. He could not recall receiving a 1099 form from respondent. He did not fill out any paperwork or forms for respondent, and his agreement with respondent was oral.

Cary testified he was aware claimant worked for La Salle County Asphalt or Owen Seibert when he hired him. He contacted claimant because he knew claimant had the equipment respondent needed and claimant was ready, willing and able to work.

Tax documents placed in evidence included claimant's 1996 1099-MISC forms reporting he had nonemployee compensation of $58,350 from La Salle County Asphalt and $987 from Advanced Asphalt. The W-2 form from respondent showed $56 in wages in 1997 with deductions taken for social security and state and medicare taxes. Claimant's 1996 federal income tax return showed wages of $5,704, but claimant testified that figure consisted entirely of wages his wife earned on the farm. The return also showed $46,798 in business income and a farm loss of $12,948. Schedule C showed claimant made a gross profit of $59,338 from his trucking business and the $46,798 was net profit. Schedule F showed farm income of $72,264, $67,784 of which came from the sale of livestock, and total expenses of $85,212. Claimant completed a schedule SE for calculating one-half of the self-employment tax and took a deduction for self-employed health insurance. The Commission found claimant's testimony regarding these tax records vague. Claimant said, "I give it to the tax man. What he does with it I don't know."

Claimant testified that he was permitted to return to employment on about March 9, 1997. He worked around the farm and went back to work for La Salle County Asphalt in 1997. After the Department of Transportation was unable to license him in 1998, he looked for another job. He had a high school education. Outside of trucking and working on the farm, he had no job skills. He placed into evidence a job search log that supported his testimony of contacting and applying to several companies. He continued to work on the farm in 1998. He was eventually hired by Illinois Security Service as a part-time security guard. At the time of the arbitration hearing, he had advanced to full-time employment, was working as an armed guard at an off-track betting facility, and was being paid $9 per hour. He earned no wages from working on the farm but did derive income from it.

■ Generally, the Commission's determinations of questions of fact will not be set aside unless they are against the manifest weight of the evidence, and even where the facts are undisputed, a question of fact is presented to the Commission if divergent inferences could reasonably be drawn from the undisputed facts. *Metropolitan Water Reclamation District of Greater Chicago v. Industrial Comm'n*, 272 Ill. App. 3d 732, 734, 650 N.E.2d 671, 673 (1995). However, to the extent the determination of the issues on appeal involve statutory construction, this court's consideration is *de novo*. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232, 756 N.E.2d 822, 827 (2001).

Respondent has not cross-appealed and does not challenge the sufficiency of claimant's evidence to establish that claimant was an employee of Nelson, as opposed to an independent contractor truck driver.

■ Section 10 of the Act, establishing the bases for calculating average weekly wage, states in relevant part:

"When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1996).

■ The primary goal of statutory construction is to ascertain and give effect to legislative intent, and the best indication of legislative intent is the plain and ordinary meaning of the language employed in the statute. *Lauer v. American Family Life Insurance Co.*, 199 Ill. 2d 384, 388, 769 N.E.2d 924, 926 (2002). When the statutory language is clear and unambiguous, the court will not resort to aids of construction. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 149, 688 N.E.2d 90, 94 (1997), quoting *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194, 381 N.E.2d 222, 224 (1978); *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 58, 770 N.E.2d 721, 725 (2002).

■ The ordinary meaning of "concurrently" is "in a concurrent manner." Webster's Third New International Dictionary 472 (1986). In a temporal context, the ordinary meaning of "concurrent" is "occurring, arising, or operating at the same time." Webster's Third New International Dictionary 472 (1986) (definition No. 2).

The parties to this appeal do not argue that the statute is ambiguous or dispute the ordinary meaning of "concurrently." Instead, they disagree whether claimant falls within the statute under the facts of this case. This issue does not involve statutory construction, and the manifest weight of the evidence standard is applied.

Claimant relies on *Jacobs v. Industrial Comm'n*, 269 Ill. App. 3d 444, 646 N.E.2d 312 (1995). In *Jacobs*, the evidence established that the respondent employer knew claimant was working for another employer as a sheet metal worker and claimant worked for both employers for the entire time he worked for respondent employer, although he had been periodically temporarily laid off from the sheet metal job and was in such a layoff period when injured in an accident arising out of and in the course of his employment with respondent employer. *Jacobs*, 269 Ill. App. 3d at 447, 646 N.E.2d at 314. The *Jacobs* court stated:

"We conclude that section 10 of the Act was intended to apply to situations where, as here, (1) claimant was employed as a sheet

metal worker for most of the 52 weeks prior to his injury except for two short layoff periods that are common in the industry, (2) his part-time job at Village Apartments was a supplement to his regular work and primary source of income as a sheet metal worker, (3) Village Apartments was aware of claimant's concurrent employment as a sheet metal worker, and (4) claimant was readily available and subject to recall for work as a sheet metal worker even though at the time of his injury he had been temporarily laid off for two or three weeks." *Jacobs*, 269 Ill. App. 3d at 448, 646 N.E.2d at 315.

In *Jacobs*, this court upheld the Commission's determination of concurrent employment.

This court distinguished *Jacobs* in *Zanger v. Industrial Comm'n*, 306 Ill. App. 3d 887, 715 N.E.2d 767 (1999). In *Zanger*, the claimant was injured on February 22, 1993, while working for the respondent employer building a pole barn machine shop. He had previously been employed by Huck Fixture Company, but he had been laid off by Huck Fixture in September 1992. *Zanger*, 306 Ill. App. 3d at 889, 715 N.E.2d at 768-69. Unlike *Jacobs*, the court in *Zanger* found the claimant had not worked for both employers concurrently (*Zanger*, 306 Ill. App. 3d at 893, 715 N.E.2d at 771) and upheld the Commission decision. *Zanger* denotes an unwillingness by this court and the Commission to expand *Jacobs* beyond the facts of that case.

■ Jacobs is distinguishable from this case for the same reasons it was distinguished in *Zanger*. Claimant's earnings from respondent were a substitute for, not a supplement of, his earnings as an asphalt truck driver. In the case at bar, the Commission could reasonably find that claimant went to work for respondent employer on a temporary basis, removing snow from roads, and at that time he was not employed by Nelson. Both jobs were seasonal and were not concurrent as they were performed in different seasons of the year. The Commission's determination in the case at bar that there was not concurrent employment was not against the manifest weight of the evidence.

■ The Commission also found that the section 8(d)(1) wage differential did not apply, apparently because claimant was being paid more as a security guard than he was paid to remove snow by respondent.

Respondent argues that section 8(b)(2) of the Act would limit claimant's benefits in this case. Because section 8(d)(1) does not apply to this case, it is unnecessary to address this contention by respondent. Moreover, this court has determined that section 8(b)(2) of the Act does not apply to wage differential awards. *General Electric Co. v. Industrial Comm'n*, 144 Ill. App. 3d 1003, 1014-17, 495 N.E.2d 68,

76-78 (1986). See *Bohannon v. Industrial Comm'n,* 237 Ill. App. 3d 989, 993, 606 N.E.2d 527, 529 (1992).

Respondent argues that claimant failed to prove the difference between the average amount that he "would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident" and the average amount he was earning or able to earn in some other employment after the accident. Respondent contends claimant was earning more now than he earned from respondent.

Without arguing that the statute is ambiguous, referring to any aids of construction, and citing any statutory construction authority, claimant argues that the term "occupation" refers to the term "usual and customary line of employment" used previously in the same subsection. This analysis ignores the modifying phrase "in which he is employed at the time of the accident" that appears immediately following the term "occupation." Courts may not supply omissions, remedy defects, add limitations, or otherwise depart from the plain meaning of statutory language under the guise of statutory construction. *In re Ben S.,* 331 Ill. App. 3d 471, 472, 771 N.E.2d 1133, 1134 (2002). Here, the subsection explicitly sets out the method of calculating impairment of earning capacity by reference to "the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident." 820 ILCS 305/8(d)(1) (West 1996). The statute does not authorize consideration of what an injured employee could have earned in some other occupation before the accident, but expressly restricts consideration to what he was earning in the job he was performing when injured.

The Commission's denial of a section 8(d)(1) award, under the facts of this case, was not against the manifest weight of the evidence or contrary to law.

The order of the circuit court of La Salle County confirming the Commission decision is affirmed.

Affirmed.

HOFFMAN and CALLUM, JJ., concur.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.

The majority disposition misapplies *Jacobs* (*Jacobs v. Industrial Comm'n,* 269 Ill. App. 3d 444, 626 N.E.2d 312 (1995)) and *Zanger* (*Zanger v. Industrial Comm'n,* 306 Ill. App. 3d 887, 715 N.E.2d 767

(1999)), due to its failure to consider the recurrent sequence of claimant's employment. Claimant was found to be a serial employee by the Commission, but he was employed by Nelson seasonally every year from 1979 to 1997, basically off during the winter months. Accordingly, claimant's situation is closer to *Jacobs*, in which the claimant was periodically temporarily laid off, rather than *Zanger*, in which the claimant was laid off after working from January 1991 to September 1992 with no indication of a date for rehire, if any. The instant case is one of concurrent employment and the Commission's failure to so hold was error.

HOLDRIDGE, J., joins this dissent.