(No. 96884.—

LARRY FLYNN, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Utica Township, Appellee).

*Opinion filed June 17, 2004.*

GARMAN, J., joined by McMORROW, C.J., dissenting.

Terence B. Kelly, of Thomson & Weintraub, of Bloomington, for appellant.

Kane, Doy & Harrington, Ltd., of Chicago (Richard A. Kimnach, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The sole issue in this case is the amount an employer is obligated to compensate an injured employee under

the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1996)). The resolution of this question requires this court to construe the phrase "working concurrently with two or more employers" in the context of workers in seasonal industries.

## BACKGROUND

The pertinent facts are undisputed. Larry Flynn (claimant) drove asphalt trucks for the sibling companies La Salle County Asphalt, Universal Asphalt, and Advanced Asphalt Company from 1979 through 1996. He was a member of the Teamsters union during that time, and his employment was controlled by the union contract. Because of the weather-dependent nature of the asphalt business, claimant's employment generally began in early spring—March or April—and continued through November or December. During the winter "off-season," claimant generally signed the "referral list" or "call list" maintained by his union and was also "on call" with the asphalt companies. Claimant testified that he was sometimes called back to work by the asphalt companies during the off-season, after he had finished work for the year and before he began the next year.

Claimant never applied for unemployment compensation during the off-season. Rather, he worked and lived on a farm which he rented from his mother. He also sometimes worked at other employment when it was available. It was during the course of one such temporary employment opportunity that he received the injury underlying the instant litigation.

On January 16, 1997, Utica Township rented claimant's large snowblower and hired claimant to run it. Jerry Cary, the Township employee who hired claimant, testified that he knew when he hired him that claimant worked for the asphalt companies during the warmer times of the year. The Township and claimant agreed that the Township would pay claimant $67 per hour for

the rental, and $8 per hour in wages. Claimant cleared snow for the Township on January 16 and 17, but while working on the latter date, after he had worked a total of seven hours clearing snow, the snowblower shaft sheared. Claimant attempted to repair the blower, but while he was using a chisel to remove the sheared bolt, the chisel jumped and hit claimant's left eye. Despite two surgeries, claimant's eye was eventually completely removed because of a detached retina and repeated intra-ocular hemorrhages.

Claimant returned to his work as an asphalt driver in 1997, but the Illinois Department of Transportation refused to renew his license in 1998, due to his vision impairment. Consequently, claimant had to seek other employment. He found work as an armed guard at an offtrack betting facility. At the time of the hearing, he was earning $9 per hour. If claimant had been able to work as an asphalt driver his wages would have been $22.59 per hour.

Claimant initiated this proceeding pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)) by filing an application for adjudication of claim with the Industrial Commission in May 1998. The arbitrator concluded that claimant's average weekly wage (AWW) as an armed guard was $360, and that his AWW as a snow blower was $56, but that his AWW "for the permanent occupation in which he was engaged at the time of the accident which permanent occupation was his usual and customary line of employment was $903.60 [$22.59 x 40]." The arbitrator found that the weekly difference between what claimant was actually earning and what he could have earned if not for his accident was $543.60 ($903.60 - $360), and ruled that pursuant to section 8(d)(1) of the Act, claimant was entitled to two-thirds of that differential, or $362.36 per week. See 820 ILCS 305/8(d)(1) (West 1996).

The Industrial Commission rejected the arbitrator's ruling, in a decision with no majority opinion. Writing for the Commission, Commissioner Smart concluded that claimant was an employee of the Township, and thus was entitled to benefits under the Act for his injury. However, claimant was not employed "concurrently" by the Township and the asphalt companies. Accordingly, what claimant earned from the asphalt companies was irrelevant, and claimant's AWW was $56 per week. Because this was less than he was earning in his employment as a security guard, claimant was not entitled to any wage differential. Instead, the Commission ruled that claimant was entitled only to 160 weeks of compensation at the AWW of $56 per week, according to the Act's scheduled compensation for the total loss of an eye. See 820 ILCS 305/8(e)(13) (West 1996).

Commissioners Stevenson and Sherman dissented. Commissioner Stevenson believed that claimant was not entitled to any compensation, because claimant was an independent contractor, rather than an employee. However, he agreed with Commissioner Smart that if claimant were entitled to compensation, his compensation should be based on an AWW of $56 per week, because claimant's snow blowing and asphalt truck driving employments were "serial," not concurrent. Commissioner Sherman agreed with Commissioner Smart that claimant was entitled to relief, but would have upheld the arbitrator's determination that claimant was concurrently employed by the Township and the asphalt companies and was thus entitled to wage differential based on the AWW that the arbitrator calculated.

The circuit court of La Salle County and the Industrial Commission division of the appellate court affirmed the Commission in all respects. A divided appellate court explicitly deferred to the Commission's conclusion on the issue of whether claimant was concurrently employed, reasoning that

"The parties to this appeal do not argue that the statute is ambiguous or dispute the ordinary meaning of 'concurrently.' Instead, they disagree whether claimant falls within the statute under the facts of this case. This issue does not involve statutory construction, and the manifest weight of the evidence standard is applied." 339 Ill. App. 3d 994, 999.

The majority held that the Commission's determination that claimant was not concurrently employed was not against the manifest weight of the evidence, stating that his "earnings from [the Township] were a substitute for, not a supplement of, his earnings as an asphalt truck driver." 339 Ill. App. 3d at 1000. The appellate majority rejected claimant's argument that his "occupation" for purposes of a wage differential award under section 8(d)(1) of the Act was his "usual and customary line of employment" as an asphalt truck driver. The appellate court noted that the statute specifically referred to the occupation "in which he is employed at the time of the accident." The majority reasoned that by the use of this modifying language, the legislature had barred consideration of an employee's earning potential in any occupation except the "job he was performing when injured." 339 Ill. App. 3d at 1001.

Justices Goldenhersh and Holdridge dissented, arguing that the majority and the Commission failed to take into account the "recurrent sequence of claimant's employment." 339 Ill. App. 3d at 1002 (Goldenhersh, J., dissenting, joined by Holdridge, J.). The dissent would have held that claimant was concurrently employed as a snow blower and an asphalt truck driver, given the long and steady history of periodic temporary seasonal layoffs.

Claimant petitioned this court for leave to appeal (177 Ill. 2d R. 315(a)), which we granted.

## ANALYSIS

The parties differ on the standard of review and the correctness of the Industrial Commission's ruling. Claim-

ant argues that the decision of the Commission should be reviewed *de novo* and set aside, while Utica argues that the Commission's decision should be confirmed because it was not against the manifest weight of the evidence.

First, we consider the standard of review. Claimant argues that the appellate court erred in deferring to the Commission because the only question was the application of the law to undisputed facts, a situation in which he contends review should be *de novo*. Utica disagrees, arguing that the appellate court was correct in deferring to the Commission rather than engaging in independent review. We agree with claimant.

The parties agree that the relevant facts here are undisputed. It is true that, as the appellate court noted, deference to the Commission is sometimes appropriate even when the facts are undisputed. See, *e.g.*, *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987); *Eagle Discount Supermarket v. Industrial Comm'n*, 82 Ill. 2d 331, 337 (1980). But this is so only when the Commission must draw *inferences* from the undisputed facts in order to render its decision. Certainly, reviewing courts must defer to the fact finder's reasonable factual inferences, even when the facts are undisputed. But in this case there is no indication that the Commission drew any inferences, or indeed did anything other than apply the law to the undisputed facts. There is no question of inference or weight. In this situation review is *de novo*.

Accordingly, we turn to the underlying question: What are a claimant's relevant earnings in determining his compensation for an injury on the facts of this case, *i.e.*, a seasonal employee injured during temporary off-season work? The circuit court, and the majority of the Commission and the appellate court, concluded that only the wages a seasonal employee earns in that part-time off-season employment should be taken into account. The arbitrator, and the dissenters in the Commission

and the appellate court, would have concluded that the employee's earnings from his main line of work should also be considered.

We turn first to the language of the relevant statutes. The two provisions directly at issue are sections 8(d)(1) and 10 of the Act. Section 8 of the Act governs the "amount of compensation which shall be paid to the employee for an accidental injury not resulting in death." Section 8(d)(1) provides:

> "If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the duration of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to 66-2/3% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 1996).

Section 10 of the Act defines an employee's average weekly wage (AWW) as:

> "the actual earnings of the employee in the employment in which he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52 ***. *** When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 820 ILCS 305/10 (West 1996).[1]

The standards which guide our interpretation of the

---

[1] Section 10 provides several different means for calculating AWW. See *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 230-31

statutory provisions are well established. The overarching aim for a court is to ascertain and give effect to the overall intent of the drafters. *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108, 123 (1995). We presume that the legislature intends that two or more statutes which relate to the same subject are to be read harmoniously, so that no provisions are rendered inoperative. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391-92 (1998). Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions to the extent possible, even where an apparent conflict exists. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002); *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Specific statutory language takes precedence over more general language relating to the same topic. *Knolls Condominium Ass'n*, 202 Ill. 2d at 459; *Shelton v. Industrial Comm'n*, 267 Ill. App. 3d 211, 217 (1994); *Bray v. Industrial Comm'n*, 161 Ill. App. 3d 87, 92 (1987). See also *Sylvester*, 197 Ill. 2d at 232.

Application of the above rules of construction leads us to disagree with the appellate court's conclusion (see 339 Ill. App. 3d at 1001) that only the AWW earned from the employer for whom the claimant was working at the time of the accident may be considered in the wage differential award. Although a reasonable reading of section 8(d)(1) in isolation, this construction renders section 8(d)(1) inconsistent with section 10 of the Act in the context of concurrent employment. Section 10 explicitly provides that when an employee is working for two or

(2001). However, the parties do not differ over the Commission's calculation of claimant's AWW as a snow blower, nor is the calculation of his AWW as an asphalt truck driver before us. Accordingly, there is no need for this court to consider whether application of the various methods of calculation might have produced different results.

more employers concurrently, with the knowledge of the employer in whose employ the claimant was injured, "wages from *all* such employers shall be considered as if earned from the employer liable for compensation." (Emphasis added.) 820 ILCS 305/10 (West 1996). Thus if the appellate court were correct, section 8(d)(1) would prohibit exactly what section 10 requires—consideration of wages earned from all employers, not just the employer for whom the claimant was working when the injury occurred. Moreover, it is also unclear why the wage differential should be based solely on the AWW earned from the employer for whom the claimant was working at the instant of the injury, when the test for wage differential is not whether the employee has been incapacitated from *that* employment, necessarily, but whether the employee has been incapacitated from his "usual and customary line of employment."

Because a facial reading of the statutes brings them into conflict, we must look beyond the plain language. Two other principles become relevant. First, the rule that the more specific statute controls over the more general—because section 10 is the only one of the two statutes which specifically addresses concurrent employment, it is the more specific of the two statutes in that situation. Second, the Workers' Compensation Act is a remedial statute intended to provide financial protection for injured workers, and it is to be liberally construed to accomplish that objective. *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 529 (1987); *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976); *Jacobs v. Industrial Comm'n*, 269 Ill. App. 3d 444, 447 (1995). This rule also leads us to conclude that when a worker is concurrently employed, all of his earnings must be considered when calculating a wage differential under section 8(d)(1).

This conclusion accords with our appellate court,

which has recognized that a claimant may be "concurrently" employed by two employers even during a temporary layoff from one of his jobs. See *Jacobs*, 269 Ill. App. 3d 444. There, the claimant was primarily employed as a sheet-metal worker. He was injured while clearing snow in a part-time job. At the time of the accident he had been laid off from his job as a sheet-metal worker for two or three weeks, but he testified that such temporary layoffs were not unusual in that line of work, and he was at all times subject to recall. The court concluded that the claimant's AWW as a sheet-metal worker should be taken into account in calculating his recovery under the Act, because his "employment relationship as a union sheet-metal worker was not severed during his layoff period or at the time of the accident." *Jacobs*, 269 Ill. App. 3d at 447. In so holding, the court noted the following facts:

> "(1) claimant was employed as a sheet metal worker for most of the 52 weeks prior to his injury except for two short layoff periods that are common in the industry, (2) his part-time job at Village Apartments was a supplement to his regular work and primary source of income as a sheet metal worker, (3) Village Apartments was aware of claimant's concurrent employment as a sheet metal worker, and (4) claimant was readily available and subject to recall for work as a sheet metal worker even though at the time of his injury he had been temporarily laid off for two or three weeks." *Jacobs*, 269 Ill. App. 3d at 448.

*Jacobs* is quite similar to the instant case. There, as here, the claimant was not in fact in the employ of both employers at the time of the accident. Rather, each claimant was performing part-time work during a period of layoff from his main occupation, during which he remained available and subject to recall for work if it became available. Such periods of layoff were common in the claimants' industries. In each case the part-time employer was aware of the claimant's main line of work. And in each case, as evinced in the instant case by the

dramatic disparity between claimant's AWW as an asphalt truck driver and as a snow blower, the part-time job was a supplement to the primary source of income, not a replacement for it. We also note that the factors noted in *Jacobs* do not purport to represent an exhaustive or exclusive list of what may be considered when determining whether a claimant is employed "concurrently" by two or more employers, and we agree with the appellate court dissent in this case that the duration and consistent seasonally recurrent nature of claimant's primary employment in this case are also relevant.

The Township argues that *Jacobs* is inapposite because there the claimant's employment for the two employers had overlapped before his layoff. The Township characterizes "the true impact and import of *Jacobs* [as] the manner in which it measured the duration—the persistence—of concurrent employment." We disagree with this characterization of the case. Although it is true that in *Jacobs* the claimant's employments had previously overlapped, the court did not rely on that fact in concluding that the claimant was concurrently employed at the time of the injury, during a layoff. Nothing in the court's reasoning indicates that it was deciding "persistence" of concurrent employment, nor does the Township explain what language in the statute would permit concurrent employment to "persist." Indeed, later in its brief the Township argues that "it is the existence, not the duration, of separation that removes both claims from the realm of 'working concurrently.'" We believe that the *Jacobs* court properly focused on the facts that the temporary layoff was customary for the industry, and that the claimant was ready and willing to be recalled at any time, and intended to return to his other profession as soon as the opportunity presented itself. The latter conclusion explains the import of the observation that the earnings from the part-time employment were

supplemental to the earnings from the claimant's main occupation.

In reaching the conclusion that an employee may be concurrently employed by two or more employers even during a temporary layoff, the *Jacobs* court quoted with approval the following passage from a leading treatise on workers' compensation:

" '[F]airness to the employee and fairness to the employer-carrier are not symmetrical, and cannot be judged by the same standards. To this one employee, this one loss is everything—he has nothing against which to offset it. To the employer, and even more to the carrier, this is just one case among many. The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees in a concurrent-employment situation, when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like workmen's compensation. \*\*\*

For the injured workman, \*\*\* [h]e, and he alone, bears the burden to being reduced to $20 a week when his actual earnings may have been five times that much. That is real unfairness. By comparison, the "unfairness" to the employer, in the form perhaps of a slight premium increase, eventually offset by the times he will benefit by the same rule, is an artificial construct with no genuine content.' 2 A. Larson, Workmen's Compensation § 60.31(c), at 10—751-52 (1993) [now at 5 L. Larson, Larson's Worker's Compensation Law § 93.03(1)(c), at 93—57 through 93—58 (2000)]." *Jacobs*, 269 Ill. App. 3d at 447-48.

According to Professor Larson, calculating a claimant's benefits based solely on the AWW of the employment in which the employee was injured, "even if it was a part-time employment," would "work[ ] severe hardship on a full-time worker by reducing him or her to the grossly inadequate benefits of a part-time worker." 5 L. Larson, Larson's Worker's Compensation Law § 93.03(3), at 93—69 (2000). He concludes:

"From the point of view of achieving a result that makes sense in relation to the claimant's real earning capacity in the past and future, however, the only satisfactory calculation, particularly when the hourly rate of pay in the concurrent jobs is sharply different, is to combine the earnings in the two jobs." 5 L. Larson, Larson's Worker's Compensation Law § 93.03(3), at 93—71 (2000).

We agree.

Our decision comports with other jurisdictions as well. The Pennsylvania Supreme Court, for example, has directly confronted the question "whether temporary layoff of a workers' compensation claimant from concurrent employment precludes assessment of his concurrent earnings experience within the average weekly wage calculation." *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 542, 746 A.2d 1108, 1109 (2000). The employee had been laid off by one employer for approximately two months at the time he was injured in another's employ. Pennsylvania noted that the Pennsylvania Workers' Compensation Act was "remedial legislation" intended to "compensate claimants for the ongoing loss in earning capacity resulting from their injuries." *Triangle Building Center*, 560 Pa. at 547, 746 A.2d at 1112. The court explicitly noted in *dicta* that "in the case of seasonal employees ***, the Act generally requires consideration of the employee's total wages for the year preceding the injury ***; this is obviously to obtain a fair assessment which takes into account the seasonal aspect of the work." *Triangle Building Center*, 560 Pa. at 547-48, 746 A.2d at 1112. The court formulated a rule that even an employment relationship which had temporarily been severed due to a layoff could "constitute concurrent employment" so long as the relationship "remain[s] sufficiently intact such that the claimant's past earning experience remains a valid predictor of future earnings loss." *Triangle Building Center*, 560 Pa. at 549, 746 A.2d at 1113.

We believe that the rule formulated by the Pennsylvania Supreme Court provides a succinct distillation of the primary consideration in determining whether a severed employment should factor in to an employee's wage calculation. The aim of the system of workers' compensation is to make an employee whole for the interference with his future earnings occasioned by an injury. See *Sylvester*, 197 Ill. 2d at 232. To fulfill this function, it is imperative to determine as accurately as possible what in fact his future earnings would be. See 5 L. Larson, Larson's Worker's Compensation Law § 93.01(1)(g), at 93—17 through 93—18 (2000) ("The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. *** [T]he loss as a result of injury must be thought of in terms of its impact on probable future earnings"). When an employment relationship has been severed, but the circumstances of the case indicate with sufficient clarity that the relationship would have played a part in the claimant's future earnings but for the injury, the future earnings must be factored into the employee's award for the injury he suffered.

We believe that the Commission erred in concluding that on the undisputed facts in this case, the claimant was not concurrently employed within the meaning of the Act. Although claimant was laid off from his main job as an asphalt truck driver at the time of the injury, the consistent recurrent seasonal nature of his employment makes it clear that the layoff endemic to his profession was merely temporary. His willingness and intent to return to his main employment are evinced not only by his having done so following similar temporary seasonal layoffs for almost two decades before the accident, but also by his actions after the accident—in point of fact, he did return to his work as an asphalt truck driver, stopping only when the injury precluded him from obtaining

the required license for that job. It would subvert the purpose of the Workers' Compensation Act to conclude that claimant's AWW from his main employment should be wholly excluded from consideration.

## CONCLUSION

It is undisputed that claimant was laid off from one of his jobs at the time that he suffered the injury in his other job. But claimant's long and consistent history of rehire after layoff, in the seasonal business in which he was employed, in addition to the facts that he was subject to rehire at any time during the layoff and that he did return to that employment after the layoff, lead to the conclusion that his employment relationship was not wholly severed such that his earnings from that employment became irrelevant to prediction of his lost future earnings. Rather, the relationship "remain[ed] sufficiently intact such that the claimant's past earning experience remains a valid predictor of future earnings loss." *Triangle Building Center*, 560 Pa. at 549, 746 A.2d at 1113. He was concurrently employed, and therefore his AWW in his "usual and customary line of employment"—as an asphalt truck driver—must be taken into account in determining the award to which he is entitled under the Act.

We reverse the judgments of the appellate and circuit courts, set aside the decision of the Industrial Commission, and remand the cause to the Commission for a calculation of claimant's section 8(d)(1) award consistent with the views herein expressed.

> *Appellate court judgment reversed;*
> *circuit court judgment reversed;*
> *Commission decision set aside;*
> *cause remanded.*

JUSTICE GARMAN, dissenting:

This case can be resolved in two ways: by analyzing

the statute or by analyzing the facts. First, this court could conduct statutory construction to determine whether a worker must be contemporaneously on the payroll of two or more employers at two or more jobs to be "working concurrently" under section 10 of the Act or whether the legislature intended to include seasonal workers within section 10. Second, this court could weigh the specific factual circumstances of the present case to resolve whether it falls under the unambiguous term "working concurrently" of section 10. See 339 Ill. App. 3d 994, 999. I dissent not because I necessarily disagree with the result but because the majority confuses the issue by claiming to do the first analysis before proceeding to do the second.

As stated by the appellate court,

"The parties to this appeal do not argue that the statute is ambiguous or dispute the ordinary meaning of 'concurrently.' Instead, they disagree whether claimant falls within the statute under the facts of this case. This issue does not involve statutory construction, and the manifest weight of the evidence standard is applied." 339 Ill. App. 3d at 999.

This brief excerpt of the appellate opinion in this case touches on the three main aspects of the majority opinion with which I disagree. First, the majority conducts incomplete—and perhaps unnecessary—statutory construction of the phrase "working concurrently." Second, the majority weighs the facts of the case to arrive at its holding without explicitly outlining how this evaluation should be done. Finally, the majority may be applying the wrong standard of review.

The majority lays the foundation for conducting statutory construction by quoting relevant principles of statutory construction and statutory provisions from the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). 211 Ill. 2d at 554-55. Relevant statutory provisions include section 8(d)(1) (820 ILCS 305/8(d)(1) (West 1996) (describing calculation of the amount of

compensation)) and section 10 (820 ILCS 305/10 (West 1996) ("When the employee is *working concurrently* with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation" (emphasis added))). The majority finds sections 8(d)(1) and 10 in conflict before concluding that section 10 controls. 211 Ill. 2d at 556. However, the majority does not then apply statutory construction rules to ascertain the meaning of "working concurrently." The majority does not discuss whether the phrase "working concurrently" is ambiguous; the legislative history of section 10 is not analyzed. The use or definition of this phrase in other statutory provisions or dictionaries is not consulted. In short, the majority fails to construe "working concurrently" even though it identifies this task as being required to resolve the sole issue of this case. 211 Ill. 2d at 548-49.

The result reached by the majority implies that it construes "working concurrently" to include workers who are temporarily laid off from one job if that job is consistently seasonally recurrent, although the holding is never expressly explained as such. If the majority is in fact performing statutory construction, then its opinion should give explicit meaning to the phrase. For example, after applying statutory construction rules, the majority could construe "working concurrently" in the negative, *i.e.*, a worker need not be actively working for two or more employers and receiving pay for two or more jobs at the same time to be "working concurrently" under section 10 of the Act, consistent with the result currently reached.

Rather than construing "working concurrently," the majority switches to a factual analysis to support its conclusion that claimant was in fact working concurrently. The majority explains its holding:

"We believe that the Commission erred in concluding that on the undisputed facts in this case, the claimant was not concurrently employed within the meaning of the Act. Although claimant was laid off from his main job as an asphalt truck driver at the time of the injury, the consistent recurrent seasonal nature of his employment makes it clear that the layoff endemic to his profession was merely temporary. His willingness and intent to return to his main employment are evinced not only by his having done so following similar temporary seasonal layoffs for almost two decades before the accident, but also by his actions after the accident—in point of fact, he did return to his work as an asphalt truck driver, stopping only when the injury precluded him from obtaining the required license for that job." 211 Ill. 2d at 561-62.

The majority weighs several factors in its analysis. The factors, mostly drawn from an Illinois appellate case, *Jacobs v. Industrial Comm'n*, 269 Ill. App. 3d 444 (1995), include: whether the worker was subject to recall to his primary employment; whether the temporary layoff was customary in the industry; whether the second job was supplemental to rather than a substitute for the primary employment; whether the second employer was aware of the worker's other job; and whether the primary employment was of a "consistent seasonally recurrent nature." 211 Ill. 2d at 557-58.

I acknowledge that *Jacobs* involves some similar facts to the present case and that these factors appear relevant to determining the nature of claimant's employment relationships. However, the present case, like *Jacobs*, merely identifies certain factual circumstances before concluding that the claimant was working concurrently. In fact, the circuit court's opinion in this case noted that the *Jacobs* court merely applied section 10 "to that specific factual context." This is not statutory construction. The majority merely corrects the error of the lower court without providing guidance to Illinois courts in evaluating future cases.

Because the majority fails to define its analysis, many questions arise. First, the nature of the analysis is unspecified. Should courts weigh all relevant factors under a totality-of-the-circumstances test? Are any factors conclusive or more important than others? The majority appears to evaluate several relevant factors, so it seems as though a totality-of-the-circumstances test is being applied. See, *e.g.*, *People v. Ballard*, 206 Ill. 2d 151, 177 (2002). However, the analysis is never explicitly identified as such.

Second, the meaning of "working concurrently" is left unaddressed by the majority, raising additional questions. Must the worker be subject to recall? Must the worker have an established pattern of layoff and recall with the same employer? For how many years? Is there an upper limit to the length of the layoff period, or can any employment from the prior 52 weeks potentially be considered concurrent employment? Perhaps all of these questions need not be answered when resolving the present case. However, Illinois courts can better address future cases presenting different facts if the majority explained the appropriate analysis in general terms rather than only discussing the proper evaluation of the specific facts of this case.

In addition, if the majority really intends to weigh the facts to arrive at its result instead of perform statutory construction, its application of the *de novo* standard of review is in doubt. The majority explains "there is no indication that the Commission drew any inferences, or indeed did anything other than apply the law to the undisputed facts. There is no question of inference or weight. In this situation review is *de novo*." 211 Ill. 2d at 553. First, the majority provides no citation for this assertion. Second, as discussed above, the majority fails to "apply the law to the undisputed facts." The majority does not provide a definition of "working concurrently"

or describe what test is used to evaluate the undisputed facts. Thus, "the law" is not defined, much less applied, so the majority does nothing more than weigh the facts to which a manifest-weight-of-the-evidence standard should be applied. 339 Ill. App. 3d at 999. If the majority retains its current justification for *de novo* review, then the opinion should explain the legal rule it claims is being applied to undisputed facts. If the majority retains its finding of error through weighing the facts of the case, then the opinion should incorporate a manifest-weight-of-the-evidence standard of review.

Finally, I question the majority's decision to make a finding about whether claimant was "working concurrently" and to remand the cause for calculation of claimant's award. When a court sets aside a decision of the Commission, but the facts found by the Commission are sufficient to determine the correct decision, a reviewing court may enter the correct decision. 820 ILCS 305/19(f)(2) (West 1996). However, when it is not clear from the record what decision is appropriate, the reviewing court should remand to the Commission so that it may decide in the first instance. *Furlong Construction Co. v. Industrial Comm'n*, 71 Ill. 2d 464, 470 (1978). The record in this case is as clear about claimant's compensation at the two jobs as it is about the other circumstances of his employment. If the majority has found the record insufficient to calculate claimant's section 8(d)(1) award to avoid a wasteful remand, then perhaps it also needs to reconsider whether the record is complete enough to support its finding that claimant was working concurrently.

In conclusion, the majority explains that the sole issue in this case requires statutory construction of the phrase "working concurrently" in relation to seasonal workers. 211 Ill. 2d at 548-49. However, the majority fails to construe this phrase; no definition or rule is provided. Instead, the majority seems to consider several

factors in a sort of totality-of-the-circumstances test before concluding that claimant was working concurrently as an asphalt truck driver and a snow blower. 211 Ill. 2d at 562. In doing so, the majority mixes two different types of analysis. The majority should use only one of these analyses and perhaps alter the standard of review accordingly. Because of the confusion that may be generated from the majority's opinion, I respectfully dissent.

CHIEF JUSTICE McMORROW joins in this dissent.